succinctly replied. First of all, pre-trial, getting the civil files, and second, as to cross Ali on prior inconsistent statements and play the dispatch tape. Hopper needed to introduce the evidence of inconsistent statements via the dispatch tape and testimony of Officer Trull. Murtagh thought Hopper was ineffective for not asking for the lesser included on theft. [Tr. 402-403] On re-direct, Murtagh stated that the prosecutor savaged Hopper in closing argument on his lapse to impeach properly. [Tr. 405]

James Hopper was called to the stand at the evidentiary hearing. [Tr. 406] Hopper was a former Alaska State Trooper and robbery investigator. [Tr. 420] He confirmed he was counsel for Douglas in the criminal case of Douglas and the CINA matter. [Tr. 407] Douglas stated the action with Ali was a drug deal, not a robbery. After further discussion, he referred to it as a theft. [Tr. 408-09, 410] Hopper stated he drafted his notes contemporaneously with the phone calls. Douglas conceded it was theft to Hopper both on the phone and in person. [Tr. 410-412, 415] Hopper conceded that if a person testified at trial that it was only a theft, not a robbery, it was sufficient for the lesser included. [Tr. 412]

Hopper confirmed, under oath, his notes did not contain any information as to lesser includes. He admitted he took thorough notes. [Tr. 416-17] At the evidentiary hearing, Hopper stated that Ali did not sound as though he was in shock, but admitted that Ali

23

sounded excited and a little confused. [Tr. 419] However, Hopper admitted Ali was coherent enough to correct himself. Based on his experience, Hopper thought Officer Trull's questioning was poor and sloppy. [Tr. 421-422]

Hopper agreed that not having a lesser included would have been very detrimental for Douglas as he was facing a presumptive term of 10 years. Under theft, he was looking at 2 years. [Tr. 425-26] In other cases, he wrote to clients about their rejection of his advice to as lesser includes. Hopper testified that he looked twice for materials as to Ali and did not find them. [Tr. 427-429] Thus, Hopper violated his own pattern procedures as to documenting client conflicts.

As to prior inconsistent statements of Ali, Hopper confirmed he did not show them during the trial. [Tr. 430] Hopper chose not to show Ali the statement because he was satisfied with the impression that he was giving to the jury and to the fact that. Ali was squirming. [Tr. 431, 438-40] Hopper confirmed he had done trials before and he knew how to argue lesser includes. Hopper stated he had the tape player and the 911 tape, but chose not to play it. [Tr. 432, 441-42]  On cross-examination on the topic of lesser included instructions, Hopper stated Douglas wanted 'all or nothing'. Up to the time the jury foreman stood up, Douglas thought he was going to be acquitted. [436-38]  Hopper thought, as the

24

trial was developing, that Douglas was possibly right and the jury was going to acquit him. [Tr. 445-446]

Hopper thought that Douglas was terrible on the stand; however, he did not convey this information to Douglas. Hopper agreed that he had a duty of candor to his client. Douglas thought he did well. [Tr. 447] Hopper did not approach Douglas after the testimony for the lesser included, because he did not think it would be productive. [Tr. 451-53]

At the evidentiary hearing, Douglas denied discussing with Hopper the lesser included instructions. As to testifying at trial, Hopper met with him at CIPT for 20 minutes only going over a few things. He did not go through the ways Douglas could be impeached. On cross-examination, Douglas denied ever saying 'all or nothing' to Hopper. Douglas denied Hopper ever telling him not to bring up the following: being a coke addict, having a parole officer, having problems with DFYS and being on parole. [Tr. 461-464, 465]

The court questioned Douglas. He stated it was his decision to take the stand and he thought he did well on the stand at the time. Douglas told Judge Andrews that he got the money from him (Ali) and never came back. [Tr. 466-471] The trial court heard arguments from the defense for a new trial and opposition from the prosecution.

The trial court made its ruling on March 16, 2001. Judge Andrews stated she had a recollection of the trial and that the Court of Appeals would have an interesting question. Hopper looked for impeachment materials, but did not find it. She thought Hopper was a competent attorney, but looking at the civil materials would be beyond the call of duty. [Tr. 484] Judge Andrews did not think that the problems with the tax returns or the question concerning the dependant would be directly impeachable. Ali claimed a dependant, but he was actually living with grandparents. Judge Andrews did not think the information would have changed the outcome of the case. [Tr. 486-489]

As to the lesser included issue, Judge Andrew was troubled and concerned given the highly detailed notes of Hopper and that it was not in his notes. [Tr. 489, 492] Judge Andrew, between Hopper and Douglas, found Hopper more credible. She viewed Douglas as having a much more limited intellectual capacity than Hopper. She ruled against Douglas on the lesser included issue. Judge Andrews did not find that Hopper lacked candor as Hopper tried to keep the lines of communication open. As to impeachment, Judge Andrews found it to be clearly tactical and ruled against Douglas. After applying the Risher standard, Judge Andrews ruled that the defendant did not meet his burden to show by clear and convincing evidence that the trial attorney's activities fell beneath the standard of minimal

26

adequacy and that failure contributed to his conviction. [Tr. 490-492]

II. **Points on Appeal**.

The strength of the case against Douglas was nominal at best--there was no evidence seized, and no confession. It was simply Ali's word versus Douglas'. In such a case, it was the evidence presented to the jury as to the credibility of the witnesses that was going to carry the day. In Eggleston v. United State, 798 F.2d 374, 376 (9th Cir. 1986), the Ninth Circuit held that "ineffective assistance claims ... must be considered in light of the strength of the government's case".

The goals of trial counsel for Douglas were simple. First, undercut the specific statements from Ali that he believed Douglas had a gun and that he was not asked the right questions by Officer Trull. Second, undercut the general reliability of Ali as a witness. Third, show that it could have been possible that Ali was seeking cocaine from Douglas.

Attorneys, whether appointed or retained, must exercise their best efforts to assure that their clients receive a fair trial. A court-appointed attorney must undertake representation and protect the defendant's interests regardless of the defendant's willingness to cooperate. Annas v. State, 126 P.2d 552, 559 (Alaska App. 1986) Annas also advised, in footnote 7, that if there is a significant disagreement between the lawyer and client, the **lawyer** should make a record of the circumstance, the lawyer's advice and reasons, and

Exh. 1
Page 38

the conclusion reached. (Emphasis added)  "An effective attorney must play the role of an active advocate rather than a mere friend of the court". <u>Evitts v. Lucy</u>, 469 U.S. 387, 394 (1985).  To this end, Hopper failed miserably and Douglas' trial was not adversarial.  In <u>United States v. Cronic</u>, 466 U.S. 684 (1984) it was clear that the duty of counsel was to put the government's case through the crucible of adversarial testing. No specific showing of prejudice is required when counsel entirely fails to subject the prosecution's case to such a testing.  <u>Cronic</u> at 565, 661.

1.  <u>Douglas' trial counsel was constitutionally ineffective and the trial court should have vacated the conviction.</u>

   A.  **Ineffectiveness Standards**

      1.  <u>U.S. Constitution</u>.

      An attorney is ineffective when he performs "below an objective standard of reasonableness"; if that deficiency creates a "reasonable probability", except for his errors that the outcome of the trial would have been different, a new trial is required. <u>Strickland v. Washington</u>, 466 U.S. 668, 687-88, 694 (1984).

      The label of "trial strategy" does not automatically immunize an attorney's performance from the Sixth Amendment challenges.  Tactical decisions of trial counsel only "deserve deference when: (1) counsel in fact bases trial conduct on strategic considerations; (2) counsel makes an informed decision based upon investigation; and (3) the decision appears reasonable under the circumstances". <u>Sanders v. Ratelle</u>, 21 F.3d 1446, 1456

(9th Cir. 1994). When an attorney fails to examine potentially exculpatory evidence, the <u>Strickland</u> presumption that the failure is "sound trial strategy" is surmounted. See <u>Jones v. Wood</u>, 114 F.3d 1002, 1011 (9th Cir. 1997).

### 2. Alaska Constitution

Art. I, § 11, Alaska Constitution, also guarantees the effective assistance of counsel to one accused of crime. The state right to counsel is denied whenever the trial attorney (1) fails to perform at least as well as a lawyer with "ordinary training and skill in criminal law-the attorney made actions or omissions that no reasonably competent attorney would make, and (2) that the incompetence resulted in prejudice-there is reasonable doubt that the incompetence contributed to the conviction". <u>Risher v. State</u>, 523 P.2d 421, 424-25 (Alaska 1974). In <u>State v. Simpson</u>, 946 P.2d 890 (Alaska App. 1997) the trial court's determination of ineffective assistance of counsel was upheld when counsel failed to utilize extensive information which could have potentially casted doubt on the credibility of the alleged victims which would raised a reasonable doubt concerning whether a jury would have convicted Simpson.

In both state and federal courts, competence of counsel is presumed, and a further presumption is made that an attorney's actions were "motivated by sound tactical considerations." <u>Jones v. State</u>, 759 P.2d 558, 569 (Alaska App. 1988). Generally

Exh. 1
Page 40

speaking, the presence of a legitimate tactical justification precludes success on the first prong of ineffectiveness analysis. <u>Id</u>.

There are, however, two important exceptions to the "tactical" justification rule. First, "a mistake made out of **ignorance** rather than from strategy cannot later be validated as being tactically defensible." <u>Jones</u>, 759 P.2d, 569 (emphasis added); <u>U.S. v. Span</u>, 75 F.3d 1383, 1390 (9th Cir. 1996). Second, if the purported "tactic" is **objectively unreasonable** -- that is, one which "no reasonably competent attorney would have adopted under the circumstances" -- ineffectiveness will be found. <u>Jones</u>, 759 P.2d, 569-70.

B.    <u>Failure to Conduct Factual Investigation</u>.

The American Bar Association has long recognized a criminal defense attorney's duty to investigate the case. Defense counsel should conduct a prompt investigation of the circumstances of the case and explore all avenues leading to facts relevant to the merits of the case and the penalty in the event of a conviction. ABA Standards for Criminal Justice: Prosecution and Defense Function, Standard 4-4.1(a) (3d ed. 1993). Investigation is crucial, because "[f]acts form the basis of effective representation. Effective representation consists of much more than the advocate's courtroom function per se." Commentary to Standard 4-4.1, 181. There is, of course, an intimate connection

between the thoroughness of an attorney's pretrial investigation and the effectiveness of his advocacy at trial.

Effective investigation by the lawyer has an important bearing on competent representation at trial. Without adequate investigation, the lawyer is not in a position to make the best use of such mechanisms as cross-examination or impeachment of adverse witnesses at trial. The lawyer needs to know as much as possible about the character and background of witnesses to take advantage of impeachment. The effectiveness of advocacy is not to be measured solely by what the lawyer does at the trial; without careful preparation, the lawyer cannot fulfill the advocate's role. Failure to make adequate pretrial investigation and preparation may also be grounds for finding ineffective assistance of counsel. Commentary to Standard 4-4.1.

Alaska in accord:"Ideally, a thorough pretrial investigation should be conducted by the defense in all criminal cases." State v. Jones, 759 P.2d 558, 569 (Alaska App. 1988). Defense counsel's failure to properly investigate an to thoroughly prepare will often deny the accused his constitutional right to the effective assistance of counsel. Powell v. Alabama, 287 U.S. 45 (1932) (reversed); Arnold v. State, 685 P.2d 1261, 1265-67 (Alaska App. 1984) (reversed).

Even under the more forgiving federal standard, the "adversarial testing process" "generally will not function properly

31

unless defense counsel has done some investigation into the prosecution's case and into various defense strategies. '[C]ounsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary.'" Kimmelman v. Morrison, 477 U.S. 365, 384 (1986) (holding counsel ineffective), quoting Strickland v. Washington, 466 U.S.,691.

In this matter, Hopper had the affirmative duty to investigate the case against his client. Jackson v. State, 824 750 P.2d 821 (Alaska App. 1988). This duty would included investigating materials, both criminal and civil, that would effect the credibility of the witness against Douglas. See Evans v. Lewis, 855 F.2d 631 (9th Cir 1988) (holding that a failure to investigate possible evidence could not be deemed a trial tactic where the lawyer did not review relevant documents that were available)

Hopper failed to review the civil matters against the complaining witness, Ali. [Exc. 77-200] He stated he looked but failed to find them at the Anchorage court house. However, Murtagh was able to locate them and the documents would have been useful to seriously undermine the credibility of Ali before the jury in several ways. First, it would show that he was more than a 'simple cab driver' that was working hard. It would have shown he was a real estate owner, thus, undercutting the prosecutor's implication that he would not spend the money for cocaine. Second, it would

32

show that Ali was comfortable in court and understood the legal process. Third, there was the self-admitted dishonesty of Ali. He signed documents for the IRS upon oath, under penalty of perjury whereby fraudulently claiming a dependant, under declaring income and "pulling one figure out of the air".

The civil evidence was critical. First, Deaphon sued Ali in 3AN-99-7230 CV for personal injuries arising out of an accident. Deaphon fell as Ali drove off, which caused serious injury to Deaphon. [Exc. 169-189] Ali was accused of not following his fare's directions for financial gain; leaving the scene and failing to render assistance. Deaphon could have been located and questioned as to how Ali was at the time of the injury. Second, Ali was an owner-landlord of a multiple unit building. He sued people for failure to pay rent. [Exc. 90-133]

Third, in 3AN-96-4460 CI, Ali was a plaintiff regarding to an automobile accident whereby he claimed damages. [Exc. 134-200] During the course of that case, there were motions filed concerning discovery and portions of a deposition was filed with the court. [Exc. 139-200] There was a wealth of information that was useful in the case against Douglas. It appears from the deposition that Ali was in a series of three accidents and the police were called to investigate, thus he knew about talking to the police. [Exc. 142, 144, 148]

33

In the same civil case, there was an issue of lost wages due to the injury. Ali was deposed about his tax returns. Ali confirmed that he signed under oath as being accurate and truthful. [Exc. 167] Ali had unreported income and he stated that he did not know it was illegal, then he stated he knew it was illegal. [Exc. 168-169] Ali initially could not remember who helped him with his tax returns. [Exc. 170, 173] Ali fraudulently declared his step-son as a dependant, when the child only receives presents and cash once in awhile. He admitted it was stupid. [Exc. 177-178] The grandparents were truly supporting the child. [Exc. 179] Ali also did not declare his tips. [Exc. 194] As to one figure related to his income, he just pulled the number out of the air. [Exc. 172] These filing show that Ali was an experienced litigant and not an honest man who was far more than a simple cab driver. Thus undercutting the prosecution's theory that Ali was a simple cab driver supporting his family who would not use cocaine.

A minimally competent attorney would check to see filings at the courthouse that involved the complaining witness as to both civil and criminal. This Hopper did, but he inexplicably failed to find the civil materials that appellant's counsel and Murtagh found. The next question was Douglas prejudiced? Yes, Ali's credibility and the State's presentation of the complaining witness would have been substantially undermined. First, it would have shown that Ali was experienced with police. Second, that he had

34

more than cab fares to support him.  Third, undeclared income in order to perhaps spend it on controlled substances.  Fourth, that Ali had lied under oath on two different topics: (1) the dependant that he did not support, and (2) the under reported income and undeclared tips.

C.   **Failure to Properly  Cross-Examine**

The Confrontation Clause of the Sixth Amendment guarantees the right of an accused in a criminal prosecution "to be confronted with the witnesses against him". The main and essential purpose of confrontation is to secure the opponent the opportunity of cross-examination.   Delaware  v.  Van  Arsdall, 475 U.S. 673 (1986) Adequate cross-examination of witnesses is the "the principal means by which the believability of a witness and the truth of his testimony are tested." Davis v. Alaska, 415 U.S. 308, 316 (1974);. Maryland v. Craig, 497 U.S. 836, 845-847 (1990).  The crucial part of cross-examination is to allow the trier of fact to have an adequate basis for evaluating the truth of the testimony.

Generally, the appellate courts entrust cross-examination techniques  to  the  professional  discretion  of  counsel. Henderson v. Norris, 118 F.3d 1283, 12, 87 (8th Cir. 1997), cert. Denied 522 U.S. 1129 (1998).  Some strategy decisions, however, are so unreasonable that they can support a claim of ineffective assistance of counsel. See Crotts v. Smith, 73, F.3d 861, 866 (9th Cir. 1996)(holding that trial counsel was ineffective for failing

to object to testimony indicated that the defendant had told a third party he was wanted for 'killing a cop').

In this matter, Hopper failed to impeach Ali with his statements given to both the dispatcher and to Officer Trull. As noted in the facts portion and by Murtagh, Ali was reasonably questioned on the issue of a weapon. Hopper could have simply played the tapes or shown Ali the transcript in order for him to agree with the earlier statements.

Hopper could have also played the tapes for the jury to decide whether Ali was asked reasonable questions. As Hopper admitted in his deposition, Ali did not sound as though he was in shock. Hopper stated he had a tactical reason not to because "Ali was squirming" and the jury could see it; however, that is not the same as substantively impeachment of the witness and getting them to agree to making the prior inconsistent statement. Being in the witness stand is inherently uncomfortable. Ali was being questioned by a person adversarial to his interests. Of course he was squirming. A minimally competent attorney would have completed the impeachment process and there was no tactical reason for Hopper not to get Ali to agree to the prior inconsistent statement.

Since a minimally competent attorney would have completed the impeachment process, the court must turn to the next prong: Was Douglas prejudiced? Yes. As it always noted in the jury instruction packet, questions by an attorney is not evidence. The

36

jury never got to hear Ali confirm the prior inconsistent statements. The prosecutor exploited this deficiency of Hopper's method, in the words of Murtagh, "savagely". The jury could, faced with substantively with the inconsistencies, have disbelieved Ali's version of events.

D.    **Failed to Present Exculpatory Evidence**.

Impeachment by an inconsistent statement is more than showing that the witness is lying or not credible. Impeachment by an inconsistent statement is also substantive evidence in favor of the defendant's theory of the case. See Alaska Rule of Evidence 801((d)(1)(A); Richards v. State, 616 P.2d 870 (Alaska 1980); Natkong v. State, 925 P.2d 672 (Alaska App. 1996) Hopper knew the legal and evidence rule that inconsistent statements are substantive evidence. It should also be noted that prior inconsistent statements have been held enough to support a conviction. Clifton v. State, 758 P.2d 1279 (Alaska App. 1988). Inconsistent statements, therefore, could support a jury finding of either acquittal or a lesser included charge.

As here, while trial counsel fails to present exculpatory and/or corroborating testimony from witnesses other than his client, ineffectiveness is frequently found, even under the more stringent federal standard. See, e.g State v. Simpson, 946 P.2d 890 (Alaska App. 1997).

37

Douglas disagrees with the trial court's conclusion that Hopper was making Ali 'uncomfortable and squirming' was sufficient trial tactics as to attorney competency. Commentators and other courts confirm that extrinsic evidence of material inconsistencies should be admitted _even if_ the witness admits that the material is inconsistent. Mueller & Kirkpatrick, 3 <u>Federal Evidence</u>, sec. 332 at 525-6 (2nd Ed. 1994 & 1997 Supp.); 3A <u>Wigmore on Evidence</u>, sec. 1037m at 1044-5 (Chadbourn rev. 1970 & 1998 Supp.); <u>U.S. v. Smith</u>, 521 F.2d 957 (D.C. Cir. 1975); <u>Williams v. U.S.</u>, 403 F.2d 176, 179 (D.C. Cir. 1968).

The importance of a witness' inconsistent statement has its Alaskan foundation in the mid-1960's. In <u>Bentley v. State</u>, 397 P.2d 976 (Alaska 1965), the Supreme Court ruled that it had been error for a trial judge to exclude extrinsic evidence of a witness' prior inconsistent statement. <u>Bentley</u> was ruled by the Supreme Court as it was for several reasons: (1) the crucial issue at trial was whether the jury should credit the witness' present testimony or should instead credit her prior inconsistent statement, and (2) the extrinsic evidence offered by Bentley (an audiotape) demonstrated the complete context of the witness's prior statement. For these reasons, the Supreme Court concluded, that there was a reasonable possibility that the jury would view the facts differently if they heard, not simply the witness' unelaborated concession that she had previously made inconsistent statements,

38

but the tape of the conversation in which she had made those statements. Id. at 979.

A recent 9th Circuit case reinforces the importance of inconsistent statements. A prior inconsistent statement is admissible to raise the suggestion that if a witness makes inconsistent statements, then his entire testimony may not be credible. Also, a witness may be impeached by their previous failure to state a fact in circumstances in which that fact naturally would have been asserted. United States v. Adamson, __ F.3d __ (9th Cir. 2002)[Release date May 23, 2002]

In this instance, the importance of the 911 tape and Officer Trull's interview [Exc. 69-76] (and gravity of Hopper's error) is even more important than in Bentley. In Douglas' trial, Ali never conceded to making the inconsistent statement as pointed out by the prosecution at closing. It was even more important for the jury to hear the inconsistent statements from the dispatch tape and Officer Trull's interview. Thus, the unused statements had two purposes: (1) to undermine Ali's credibility, and (2) to show substantive fact of his prior statements as to the lack of a weapon. The prior inconsistent statements should have been presented in order to secure a conviction or a lesser included of robbery in the second degree.

Exh. 1
Page 50

**E.**    <u>Failure to object to improper evidence and seek limiting instructions</u>.

Trial counsel abandoned his client on cross-examination, permitting the prosecutor, without objection, to abuse him with a plethora of plainly improper, but effective, attacks. As noted in the facts, Douglas testified to things that should have a cautionary instruction issued: parole, prior drug activities, being in custody, the status of an addict and the taking away of his child by DFYS. This was improper and left the jury with the impression that he was prone to violate the law. <u>Dickson v. Sullivan</u>, 849 F.2d 403, 408 (9th Cir. 1988)(observing that evidence of criminal acts is highly prejudicial); <u>United States v. Bagley</u>, 772 F.2d 482, 488 (9th Cir. 1985)(observing the human tendency to draw a conclusion which is impermissible in law, because he did it before, he must have done it again). "A competent counsel must, of course, pursue sound tactics. And when trial counsel's failure to object to inadmissible and substantially prejudicial evidence stems from reliance on a tactic that is patently unsound, that failure to object will not preclude a finding of plain error". <u>Massey v. State</u>, 771 P.2d 448, 453 (Alaska App. 1989) Here the judge would have given the cautionary/curative instruction to prevent the jury from considering improper and prejudicial evidence from being considered.

Further, Cox testified that Douglas was at Sears and she obtained a conviction. The jury should have been told not to

40

consider these points as substantive evidence and that they were only to consider the evidence concerning the night in question. Also, that the mere presence at a crime is insufficient to be convicted of a crime.

While on the stand, the defense asked Douglas if he was surprised when he was charged. Douglas replied that he was because he was in custody on a parole violation. [Tr. 266] Since Douglas was served, it was clear he was in custody for other matters unrelated to the robbery charge. Third, the mentioning of parole clearly let the jury know there was a felony involved. Granted Douglas brought it up, but the court, *sua sponte*, should have issued a curative or cautionary instruction. In this case, none was issued. Hopper, seeing his client doing so poorly on the stand, should have minimized the damage by asking for the cautionary instruction.

Given it was a credibility contest between the defendant and the complaining witness, any ancillary information about the respective parties had to have impact upon the jury. In Douglas' statements, he indicated a drug sale that was never completed and Ali's version was that it was a robbery. The information about parole, coupled with the prior convictions of dishonesty, drug usage and sales and the remark he was present a his girlfriend's theft arrest, swayed the jury against him. Therefore, there was no

Exh. 1
Page 52

tactical reason to not seek curative or cautionary instructions from the court for the jury.

Without the requested instruction, the jury was free to consider the evidence as substantive against Douglas as shown by the prosecution's closing. State v. Steffensen, 902 P.2d 340, 342-43 (Alaska App. 1995);Barry v. State, 675 P.2d 1295-96 (Alaska App. 1982).

The prosecutor also asked Douglas about the identity of his "dope man", stating that "may be we want to go talk to him and find out what he has to say". [Tr. 280] This was an improper question. First, it was not relevant to the case. Douglas stated that he did not have contact with the guy that night. A relevance objection would have been granted. Also, there was a Rule 403 objection as to confusion and prejudice. Under this theory, it would have been granted. A competent attorney would have objected and the court would have granted it. The prejudice was apparent whereby the line of questioning made Douglas to appear as a liar and hiding facts from the jury. A prosecutor, if he had the information, could have sought information; however, the dealer also had the right to maintain his right of silence in light of an accusation.

**F.   Failure to Request Lesser Included Offense.**

A defendant is entitled to have the jury instructed on his theory of the defense as long as he can demonstrate his theory is supported by evidence presented at trial, is not covered by other

42

instructions, and does not misstate the law.    United States v. Baker, 40 F.3d 154, 162 (7th Cir. 1994).    The failure to request and obtain instructions which would provide a legal basis for acquittal is, of course, ineffective.    U.S. v. Span, 75 F.3d 1383, 1387-90 (9th Cir. 1996).    Douglas believes failure to request a lesser included instruction under this circumstance should also be deemed ineffective assistance of counsel.

Alaska views it is a fundamental part of an attorney's duty to protect a defendant's right to a lesser included instruction. State v. Laraby, 842 P.2d 1275, 1280 (Alaska App. 1992)

Douglas testified he did not know about the lesser included of theft.    Hopper testified that he did discuss it, but Douglas did not want it.    Hopper did not document this discussion in his notes or send a letter to Douglas stating the position even though it was his practice.    Hopper stated that Douglas wanted an all or nothing defense.    This is highly surprising since Hopper was a former Alaska State Trooper and an experience criminal defense lawyer whereby both professions have taught him to take detailed noted. However, there are flaws to Hopper's testimony.    First, he thought it was Douglas' choice.    Second, Hopper was not candid with Douglas as to his poor performance on the stand in violation of the Alaska Rule of Professional Conduct, Code 2.1: the duty of candor.    The commentary states that "a client is entitled to straightforward advice expressing the lawyer's honest assessment."    Douglas asked

43

how he did, Hopper lied or was silent, thus, Douglas lost the last opportunity for the lesser included.

In Alaska, there was a similar situation in <u>Jackson v. State</u>, 750 P.2d 821, 827 (Alaska App. 1988). Jackson's case went to the jury with 1st and 2nd degree murder instructions. The trial attorney stated that he thought his client had a good chance of being acquitted because of the claim of self-defense whereby the victim had a gun in his pocket and a lesser charge could have compromised the jury. Therefore, it was a tactical choice and Judge Ripley agreed.

However, this 'tactic' does not apply to Douglas' case given the impeachment with regard to the prior bad acts and improper evidence that came into evidence without objection. Here he admitted that he took money from Ali for cocaine. Ali said he was robbed. The jury had a lot of bad evidence as to Douglas' character. Given that Douglas was facing a presumptive 10 years, it would not be a "sound trial" for him to go with an 'all or nothing defense'. It must also be noted that Douglas asked Hopper how he did on the stand. Hopper was not candid with him. Thus, if Hopper is to be believed, Douglas' fundamental decision as to not have the lesser included was based on his own counsel lying to him as to how he performed on the stand. See <u>Laraby v. State</u>, at 1280.

There are three possible positions as to this scenario. First, if Douglas and Hopper did not discuss lesser included

44

charges as it was testified by Douglas and supported by Hopper's lack of correspondence and notes on the matter, Hopper would have been ineffective for not discussing the lesser included charge. Douglas would have been prejudiced by not having his defense tendered to the jury by instructions. No attorney would have presented a defense and have a tactical reason not to have the jury instructed upon it. Douglas prevails and the conviction must be reversed.

Second, if Hopper and Douglas did discuss lesser included instructions, but it was Douglas' choice not to have a lesser included (if that is his right-that it is strategic) was fundamentally flawed by Hopper's lack of candor as to his performance. Douglas decision was prejudiced by his attorney's lack of honesty and fair assessment of the case against him. Douglas was the last witness in the case. There was no tactical reason not to give him a candid assessment in order to see if Douglas wanted the lesser included instruction. A client's rights, including whether to have a lesser included offense instruction, should not be abrogated due to trial counsel's lack of willingness to given unwelcome news. Douglas prevails due to his attorney's lack of candor and the conviction must be reversed.

Third, Hopper should have asked for the jury instruction for theft over his client's objections as a tactical consideration or at least it should have been documented. See <u>Annas</u>, footnote 7.

If asking for a lesser included is tactical, then Hopper had every right to ask for the lesser included instruction of theft. There would be no reason not to ask for it tactically. At the end of the trial, Ali was not sufficiently impeached. Douglas had been made a complete fool of without objection. The jury knew Douglas was on parole, lost his kids, a drug user in the amounts of thousands of dollars, unemployed due to drug usage, in custody and had five convictions for dishonesty. No competent attorney, on this factual basis, could have entertained the idea that a jury would acquit Douglas on an 'all or nothing' basis. The only competent thing Hopper could have done was to ask for the theft instruction and hammer at the lack of a weapon issue. This he failed to do and Douglas was prejudiced.

As noted earlier, in <u>Annas</u>, attorneys should document such issues in order to prevent such disagreements. In this instance, Hopper's failure to do his normal practice or pattern of documenting in his notes, or via letter, the denial by Douglas of a lesser included, thus, his testimony should not be deemed credible especially given he was a former Trooper. Douglas should be deemed to have prevailed on the credibility issue.

G.   <u>**Personal Knowledge of the Prosecutor: Violation of the Witness-Advocate Rule**</u>.

During the course of the trial, Douglas took the stand and stated he could get "$200.00 worth of cocaine for $100.00 cash from his dealer." [Tr. 253]   The prosecutor disagreed and stated that

46

was not how cocaine sales were done given the fact that he had prosecuted so many cases. The prosecution stated that parts of Douglas' story did not ring true. The prosecutor explained that "I know a lot about it, because I used prosecute drug cases. So I -you know, terminologies and terms I used." He then stated that you do not get deals like Douglas described, $200.00 worth of drugs for $100.00. The prosecutor stated that drugs are about money and that was why there was so much violence around it. The dealers would not give him any kind of charity. [Tr. 316-317]

The prosecution then told the jury they do not have the experiences with drug dealers, and do not know for sure whether they would be generous or not. He stated common sense tells you they would not. The prosecution then argued that Douglas' version of the time line does not work out. [Tr. 318-321] This injected his personal experience and implied he was an 'expert' based on his prior prosecutions of controlled substance cases.

The witness-advocate rule is very important. It prevents the parties from being put into the untenable position of not being able to cross-examine a premise or witness. As noted in O'Brannon v. State, 812 P.2d 222, 226 (Alaska App. 1991) O'Brannon noted that "An advocate who becomes a witness is in the unseemly and ineffective position of arguing his own credibility. The roles of an advocate and of a witness are inconsistent; the function of an advocate is to advance or argue the cause of another, while that

of a witness is to state facts objectively." Also see <u>Kanulie v. State</u>, 796 P.2d 844 (Alaska App. 1990)(where the prosecutor injects his own credibility into the trial); <u>United States v. McKoy</u>, 771 F.2d 1207, 1211 (9th Cir. 1985) This closing statement treaded on the sacred witness-advocate rule where the attorney cannot be an advocate and testify as to facts. The prosecutor's remarks made the jury have to choose between believing Douglas' version of drug exchanges or believing the prosecution's assertions that Douglas was wrong.

**H.    The Prosecution Made a Highly Improper Closing.**

The prosecutor improperly did the following things: called Douglas and Cox crack heads, vouched for Ali, and improperly used addiction and poverty as a reason to convict. Also, he argued, inferentially, that Ali was lucky to be alive. Because Hopper did not object, it must be reviewed for plain error. The standards for plain error have been previously set forth. <u>Potts v. State</u>, 712 P.2d 385, 390 (Alaska App. 1985).

**1.    The Closing.**

The prosecutor did his closing. He stated to the jury that either they had to believe Douglas that it was a drug deal gone bad or believe Ali that he was robbed. The prosecution argued that Ali was more believable and credible. [Tr. 310, 315] The prosecution stated that parts of Douglas' story did not ring true. [Tr. 316] The prosecutor explained that "I know a lot about it, because I

48

used prosecute drug cases.   So I---you know, terminologies and
terms I used." He then stated that you don't get deals like Douglas
described, $200.00 worth of drugs for $100.00.   The prosecutor
stated that drugs are about money and that was why there was so
much violence around it.   The dealers would not give him any kind
of charity.   The prosecution then told the jury that he does not
have the experiences with drug dealers, and know for sure whether
they would be generous or not.   He stated common sense tells you
they would not. [Tr. 316-18]

The prosecution then stated that the jury needed to consider
the two people. He noted Douglas was a cocaine addict and he tried
to negotiate four dollars off the cab ride.   There was no objection
to the addict remark or clarification that it was Cox that sought
the cab fare reduction, not Douglas.   The prosecution then stated
that Douglas had been convicted of five dishonest crimes and was on
a bender, lost his job and lost his children. [Tr. 321-22] The
prosecution compared Ali.   He noted the following about Ali: (1)
trying to support his family, in the Army Reserves, vulnerable job
where cab drivers have been killed and that he is going to school.
He asked "Is the Army Reserves going to tolerate him smoking up
crack cocaine?" [Tr. 323]

The prosecution then turned to Douglas again.   He stated that
Douglas had every reason to lie.   "He was up to his neck" The
prosecutor then stated that Ali came in and told the truth, you

have no reason to disbelieve him and every reasonable reason to disbelieve Douglas. [Tr. 323] At no time did the defense object to the prosecution's closing argument.

On rebuttal, the prosecutor started off on the topic of 'motive' and that the drug addiction was the motive. First, he calls Cox and Douglas "crack heads". Second, he pointed out the lost jobs, children and continued use of crack cocaine. Douglas' failure to complete treatment and that he has to have crack. The prosecutor states that forty dollars worth is the size of crack a pencil eraser. There was no basis for this testimony. [Tr. 343] Then the prosecution describes the thought processes of Ali. He tells the jury that Ali's processes are: 'he turns the corner into the dark, "He's read the headlines: Taxicab driver found dead, you know, off in the boonies, off in a dark street". Again the prosecution attributes the following thought to Ali: "I might not see my wife: I might not see my kid; I am calling up. Because the one thing I know is, this guy's from 99." The prosecution stated that Douglas was desperate for money. [Tr. 345] However, the testimony from Douglas was that he had money, but could not get a response from his dealer. The same as Cox.

The prosecution turns to the closing of Hopper. He stated that it was defense to take someone "who's perfectly innocent, has reported this crime as the victim" and pick him apart. Then the prosecution pointed out that Hopper did show Ali the transcript and

testimony from the grand jury. The jury had to remember that Ali never agreed with what Hopper asked. [Tr. 347-348] The prosecution stated that Douglas and Cox were so desperate for drugs, they used the baby they lost as an excuse to get a break on the fare. The prosecution called Douglas' defense as 'repulsive'. [Tr. 351-52]

The prosecution stated that Ali is what he appeared to be a simple man that drives a cab; in the U.S. Reserves; going to college, from Bangladesh; married, has kids, tries to support them; Doing a job that involves dealing with people like Douglas, they get so desperate that they are going to rob you or going to get desperate and made [sic] enough they're going to pull a weapon. [Tr. 353-354]

**2. General Law.**

Prosecutorial misconduct violates a defendant's due process rights when it "so infected the trial with unfairness as to make the resulting conviction a denial of due process". Darden v. Wainwright, 477 U.S. 168, 181 (1986). United States v. Young, 470 U.S. 1, 14-20, 105 S.Ct. 1038, 1045-49, 84 L.Ed.2d 1 (1985); Potts v. State, 712 P.2d 385, 390-95 (Alaska App.1985); Patterson v. State, 747 P.2d 535, 539 (Alaska App. 1987)(improper for prosecutor to call the defendant a crud)  Also see A.B.A. Standards for Criminal Justice Sec. 3-5.8 (2d ed. 1982).

Prosecution closings were recently addressed in State of North Carolina v. Jones, __ S.E.2d __ (North Carolina 2002) [Release

51

date, February 1, 2002] and the Ninth Circuit also recently addressed closing arguments in <u>Buford v. United States</u>, __ F.3d __ (9th Cir. 2002)[Release date, February 8, 2002]. (The prosecutor's ultimate goal is not to "win the case" but to see that "justice is done". If the prosecution is to "win" the case, it must be done fairly and within the rules).

### i. <u>Improper Vouching by the Prosecution</u>.

The prosecution asks, "Would the U.S. Reserves keep Ali if he was smoking crack?" Clearly improper as he was implying the government was testing or checking on the complaining witness. There was no evidence of this and it involved materials outside the scope of the trial. He stated that Ali "told the truth" and was "perfectly innocent" [Tr. 323, 347] This was improper vouching for the complaining witness and under scores the importance of the civil impeachment materials that Hopper failed to find.

In <u>Darling v. State</u>, 520 P.2d 793 (Alaska 1974), the reviewing court adopted the rule that it was improper for a prosecuting attorney to express his personal belief as to the reliability of a witness, whether to bolster the State's case or to discredit the credibility or reliability of defense witnesses. Also, see <u>United States v. Hermanek</u>, ___ F.3d ___ (9th Cir. 2002)(Release date, May 15, 2002); <u>United States v. Edwards</u>, 154 F.3d 915, 921 (9th Cir. 1998).

### ii. <u>Using Poverty, Calling Douglas/cox 'Crackhead' and the Defense Strategy 'Repulsive', Arguing Addiction and Relative Financial Positions as Evidence and Argument</u>.

The prosecution argued the relative financial positions of Ali, Douglas and Cox as to the credibility and motive to commit the crime of robbery. It is improper for the prosecution to argue poverty in criminal cases as a reason to convict. <u>United States v. Mitchell</u>, 172 F.3d 1104, 1108-09 (9th Cir. 1999); <u>United States v. Jackson</u>, 882 F.2d 1444, 1449 (9th Cir. 1989). The reviewing courts have also consistently disapproved of the admission of evidence showing the accused's addiction to drugs as proof of motive. <u>Gould v. State</u>, 579 P.2d 535, 538 (Alaska 1978) and <u>Eubanks v. State</u>, 516 P.2d 726, 729 (Alaska 1973).

Here there was no unexplained wealth as required by <u>Mitchell</u>. Douglas stated that he had been given the money and was supposed to obtain drugs for Ali. This he failed to do. The prosecution should have never used this as an argument. Nor, should the prosecutor have called the defense 'repulsive' and that Douglas and Cox and crack-heads.

### iii. <u>Inflammatory Argument</u>.

The prosecutor is to avoid inflammatory arguments. In this case, he did not as he went into the mind-set of Ali that was not in the argument. He raised the specter of Ali being shot and robbed.[Tr. 322] He brought up the fact that such things had been in the newspaper. He played upon the jury's fears as he stated

53

that Ali was worried about his wife and kid(s). This was improper and it was prejudice to Douglas at it painted him as a potential murderer.

The question was whether the remarks made by the prosecutor played upon the fears, sympathies, passions, or prejudices of the jury as to amount to plain error. Garroutte v. State, 508 P.2d 1190 (Alaska 1973). Without a doubt the statements of the prosecutor were improper.

### I.   **Cumulative Error**.

This court must reverse Douglas' conviction if it concludes that the impact of errors at trial was so prejudicial that he was deprived of a fair trial, even if this court determines that each individual error was harmless. See Drumbarger v. State, 716 P.2d 6, 16 (Alaska App. 1986); Thompson v. State, 769 P.2d 997, 1005 (Alaska App. 1989).

Federally, cumulative error applies where, "although no single trial error examined in isolation is sufficiently prejudicial to warrant reversal, the cumulative effective of multiple error may still prejudice a defendant". United States v. Frederick, 78 F. 3d 1370, 1381 (9th Cir. 1996).

### CONCLUSION

This court should find that the trial was truly not adversarial as required by the constitution. Douglas' conviction should be vacated and remanded back to the lower court for a new

trial. The conviction by the jury was invalid due to the improper evidence and arguments presented by the prosecution.    Douglas' conviction should be set aside for that reason also.

DATED this 25 day of July, 2002, at Anchorage, Alaska.

                              KALAMARIDES & LAMBERT
                              Attorneys for Appellant

                    By: _____
                              Randall S. Cavanaugh
                              ABA #8812215

55