IN THE COURT OF APPEALS OF THE STATE OF ALASKA

JERRY DOUGLAS,                )
                              )
            Appellant,        )
                              )
vs.                           )
                              )
STATE OF ALASKA,              )
                              )
            Appellee.         )
_____)

Case No. A-08069
Tr. Ct. No. 3AN-S99-4292 CR

RECEIVED
DEPARTMENT OF LAW
DEC 11 2002
OFFICE OF SPECIAL PROSECUTIONS
AND APPEALS
ANCHORAGE, ALASKA

APPEAL FROM THE SUPERIOR COURT
FOR THE STATE OF ALASKA, THIRD JUDICIAL DISTRICT
CONVICTION BY JURY VERDICT ON NOVEMBER 23, 1999
AND THE DENIAL OF THE MOTION FOR NEW TRIAL
DATED MARCH 16, 2002 BY JUDGE ELAINE M. ANDREWS

## REPLY BRIEF OF APPELLANT JERRY DOUGLAS

VRA CERTIFICATION

I certify that this document and its attachments
do not contain (1) the name of a victim of a
sexual offense listed in AS 12.61.140 or (2) a
residence or business address or telephone number
of a victim of or witness to any offense unless
it is an address used to identify the place of
a crime or it is an address or telephone number in
a transcript of a court proceeding and disclosure
of the information was ordered by the court.

FILED _November 27, 2002_
in the Court of Appeals for the
STATE OF ALASKA

CLERK OF THE APPELLATE COURTS

By: _Beth Meyer_
    Deputy Clerk

KALAMARIDES & LAMBERT
710 H Street, Suite 450
Anchorage, AK 99501
907/276-2135

Attorneys for Appellant
Jerry Douglas

_Randall S. Cavanaugh_
ABA #8812215

# TABLE OF CONTENTS

Page

TABLE OF CONTENTS . . . . . . . . . . . . . . . . . . . . . . . i

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . ii-iii

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

I.    DOUGLAS RECEIVED EFFECTIVE ASSISTANCE OF COUNSEL . . . . . 2

      A.   Failure to Investigate . . . . . . . . . . . . . . 2

      B.   The Failure to Impeach Ali . . . . . . . . . . . . 5

      C.   Lesser Included Offenses . . . . . . . . . . . . . 6

II.   JUDGE ANDREWS' FINDING OF HOPPER BEING MORE
      CREDIBLE ON THE ISSUE OF LESSER INCLUDES THAN
      DOUGLAS WAS CLEARLY ERRONEOUS . . . . . . . . . . . . . . 7

III.  THE PROSECUTION MADE A HIGHLY IMPROPER CLOSING . . . . . . 9

      A.   The Closing . . . . . . . . . . . . . . . . . . . 10

      B.   General Law . . . . . . . . . . . . . . . . . . . 13

      C.   Improper Vouching by the Prosecution . . . . . . 15

      D.   Using Poverty, Calling Douglas/Cox 'Crack Heads"
           and the Defense Strategy 'Repulsive', Arguing
           Addiction and Relative Financial Positions as
           Evidence and Argument . . . . . . . . . . . . . 17

      E.   Inflammatory Argument . . . . . . . . . . . . . . 18

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . 19

i

Exh. 2
Page 2

# TABLE OF AUTHORITIES

Page

## Cases

Andrus v. State,
    2002 WL 31376725 (Alaska App.) . . . . . . . . . . . . . 18

Blueford v. United States,
    __ F.3d __ (9th Cir. 2002) Release date,
    February 8, 2002] [Amended October 30,
    2002 and November 22, 2002] . . . . . . . . . . . . . . . 14

Darden v. Wainwright,
    477 U.S. 168, 181 (1986) . . . . . . . . . . . . . . . . . 13

Darling v. State,
    520 P.2d 793 (Alaska 1974) . . . . . . . . . . . . . . . . 15

Eubanks v. State,
    516 P.2d 726, 729 (Alaska 1973) . . . . . . . . . . . . . 17

Garroutte v. State,
    508 P.2d 1190 (Alaska 1973) . . . . . . . . . . . . . . . 19

Gould v. State,
    579 P.2d 535, 538 (Alaska 1978) . . . . . . . . . . . . . 17

Mikell v. State,
    2002 WL 81795 (Alaska App.) . . . . . . . . . . . . . . . 18

Myers v. State of Florida,
    788 So. 2d 1112 (Flo. App. 2001) . . . . . . . . . . . . . 16

Patterson v. State,
    747 P.2d 535, 539 (Alaska App. 1987) . . . . . . . . . . . 14

Potts v. State,
    12 P.2d 385, 390-95 (Alaska App.1985) . . . . . . . . . . 14

Sanders v. Ratelle,
    21 F.3d 1446, 1456 (9th Cir. 1994) . . . . . . . . . . . . 5

State of North Carolina v. Jones,
    __ S.E.2d __ (North Carolina 2002)
    [Release date, February 1, 2002] . . . . . . . . . . . . . 14

Exh. 2
Page 3

State v. Jarret,
    527 S.E. 2d 693, 697 (North Carolina 2000) . . . . . . . 18

United States v. Edwards,
    154 F.3d 915, 921 (9th Cir. 1998) . . . . . . . . . . . 16

United States v. Hermanek,
    289 F.3d 1076 (9th Cir. 2002)
    (Release date, May 15, 2002) . . . . . . . . . . . . 15, 16

United States v. Jackson,
    882 F.2d 1444, 1449 (9th Cir. 1989) . . . . . . . . . 17

United States v. Mitchell,
    172 F.3d 1104, 1108-09 (9th Cir. 1999) . . . . . . . . 17

United States v. Young,
    470 U.S. 1, 14-20, 105 S.Ct. 1038,
    1045-49, 84 L.Ed.2d 1 (1985) . . . . . . . . . . . . 13

## Rules of Court

Alaska Evidence Rule 401 . . . . . . . . . . . . . . . . . 3

Alaska Evidence Rule 608 . . . . . . . . . . . . . . . . . 3

## Other

A.B.A. Standards for Criminal Justice
    Sec. 3-5.8 (2d ed. 1982) . . . . . . . . . . . . . . . 14

Exh. 2
Page 4

ARGUMENT

While it is conceded that a defendant is not entitled to a perfect defense, but the defendant is entitled to a minimally competent defense where the allegations and witnesses against the defendant are properly confronted with impeachment materials and substantive evidence in favor of the defendant is presented to the trier of fact.  The questions before the court are simple.  First, was Douglas competently represented by his appointed counsel when the attorney failed to do the following things:  a) find useful materials to impeach the complaining witness with items from civil files on the sole complaining witness that were readily accessible in the same courthouse as the defendant's trial; b) failed to ask for a lesser included instruction that conformed with the defense theory that it was theft and not robbery; and c) failed to impeach the sole complaining witness with prior inconsistent statements that there was no indication of weapon by producing the transcript, playing the audio tape or calling the investigating officer?

Second, was Douglas prejudiced by the prosecution's improper closing argument that had him (and his witness) being called a "crack head", vouching for the credibility of the sole witness against defendant and the prosecution's violating the witness advocate rule by presenting his own past experience and knowledge as a drug prosecutor?

1

I.   <u>DOUGLAS RECEIVED EFFECTIVE ASSISTANCE OF COUNSEL</u>

The State of Alaska argues that Douglas received effective assistance of counsel. (Appellee's Brief at pg. 11) This argument bellies the facts in this case that it was proven by clear and convincing evidence at the evidentiary hearing before Judge Andrews. As to the failure to investigate, it must be pointed out that I first discovered the civil materials on Ali. John Murtagh was then used as an expert and verified that the materials were there and what may have happened when he reviewed the case as an expert on behalf of Douglas. The State of Alaska does not dispute Murtagh as an expert in the area of criminal defense. Murtagh found that Douglas' trial attorney did not give minimally competent representation at trial.

A.   <u>Failure to Investigate</u>

The State of Alaska defends Hopper's inactions and states that his failure to find the civil materials relating to Ali did not amount to ineffective assistance of counsel. Hopper had no explanation as to why he did not find the materials. In fact, the materials were readily accessible in the Anchorage courthouse where the trial of Douglas was held. It is clear that Hopper did not find the materials. That fact is not disputed.

What is in dispute is whether the materials concerning Ali were relevant. The simple answer is "yes". The State of Alaska argues that the civil information concerning Ali would not

Exh. 2
Page 6

have come into trial for the robbery allegation. Douglas respectfully disagrees. The civil materials that Hopper failed to find and use against Ali were clearly relevant as defined by the Alaska Evidence Rule 401. "Relevant Evidence" means "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be with the evidence". The readily available information clearly undermined the credibility of Ali as a "simple honest man" as the prosecution presented him.

First, as to the evidence of the perjury on tax returns. Ali admitted to perjuring himself on his tax returns. This was evidence he did not take his oath to tell the truth seriously and would have been admissible under Evidence Rule 608. A jury can be swayed as to the credibility when a witness under-declares his income, declares a child as a deduction that was not proper. Thus, would have shown that Ali would lie to achieve his own ends. It would have been hard for the prosecution to argue that Ali was "honest and simple man" when Hopper would have surprised the witness (after the opening given by the prosecution) with his admissions as to committing tax fraud under oath. The prosecution would have had a significant problem with the complaining witness' credibility after such evidence was presented to the jury.

Second, the civil materials concerning the depositions would show that Ali would waffle when confronted with his own

3

inconsistencies.    Third,   the   civil   materials   concerning   the
landlord-tenant matters would show that Ali is comfortable in court
to the degree that he handles his own affairs.   Also, that he had
more  assets  than  being  a  "simple  cab"  owner.    It  should  be
remembered  that  the  prosecution  presented  Ali  that  "[h]e  is  a
simple  man  who  drives  cab.   He's  in  the  U.S.  Army  Reserves.   He
does that so that he can go to college to make a better life for
himself.   He came from Bangladesh in '91.   He went to California.
He moved up here in '94, and he's been working ever since.   He's
married; he's got kids; he tries to support them."   Then the State
goes on to say that "he's going to be dealing with -- constantly
with people like Mr. Douglas.   And you don't know which time it is
that they're going to get so desperate that they're going to rob
you, or they're going to get desperate and made [sic] enough that
they're going to pull a weapon." [Tr. 353-354]

What  the  jury  did  not  know  was  that  Ali  was  an
experienced litigant who lied on his taxes, had prior contacts with
the police and would prevaricate when asked difficult questions
under oath.   To this end, Douglas was prejudiced.   In a credibility
contest, the evidence could have given the jury pause to Ali's
excuses that he did not understand the police officer's question or
that the officer did not ask the right question as to the "weapon"
issue.

B.    The Failure to Impeach Ali

The State of Alaska argues that Judge Andrews properly determined that Hopper had tactical decisions not to play the tapes. (Appellee's Brief, p. 15).    However, Judge Andrews' determination is not supported by the record that it was "tactical".    It should be remembered that the label of "trial strategy" does not automatically immunize an attorney's performance from Sixth Amendment challenges.    Tactical decisions of trial counsel only "deserve deference when: (1) counsel in fact bases trial conduct on strategic considerations; (2) counsel makes an informed decision based upon investigation; and (3) the decision appears reasonable under the circumstances".    Sanders v. Ratelle, 21 F.3d 1446, 1456 (9th Cir. 1994).

Under the Sanders standard, Hopper's "tactics" do not stand up to careful scrutiny as to being "reasonable". At his deposition, Hopper admitted that he had received from the prosecution and reviewed the 911 tape and interview tape of Officer Trull. Hopper admitted that Ali did not sound as though he was in shock on the interview tape.    Hopper admitted that Officer Trull asked "is there anything else" (or words to that effect) to Ali. Hopper did not remember if he cross-examined Officer Trull on the statements or demeanor of Ali. The lack of any mention of a weapon or weapon like gesture by Ali has to be viewed as to exculpatory as

5

to the "dangerous weapon" element of the charge of first degree robbery.

Hopper's testimony at the evidentiary hearing justified the lack of presenting the exculpatory evidence was that he thought the jury knew Ali was lying because he was 'squirming' while on the witness stand. Again, as noted in the initial brief, this "squirming" is <u>not</u> substantive evidence. This is not a reasonable tactic, to rely upon non-verbal communication to convey substantive evidence in favor of a defendant, especially after the defendant's deplorable performance on the stand as his own witness. A competent attorney would have presented the statement of Ali at the scene concerning the lack of a weapon. A competent attorney would have presented the investigating officer to show there was no lack of communication between Ali and him the night the robbery was supposed to have taken place. A competent attorney would have had the jury listen to the tape to show there was no miscommunication. This should have been done after Hopper saw Douglas' performance on the stand. This court should over rule the trial court's determination and set aside the conviction.

C.    <u>Lesser included Offenses</u>

The State of Alaska contends that Judge Andrews' decision concerning the lesser included issue should be upheld. Again the trial court's decision is contrary to the very facts of the case and evidence presented to the court. Her factual determination is

-

6

clearly mistaken.  First, Douglas has the right to have a jury instruction that follows the defense's theory that Douglas did not rob Ali, he just failed to return the money or failed to provide the agreed upon cocaine.  Thus, Douglas was guilty of theft, not robbery in either the first or second degree. As noted in opening brief, Douglas always maintained there was no robbery. Hopper failed to tender a lesser included instruction for theft.

In his deposition, Hopper did not think lesser included applied.  He had pulled the materials.  Finally, Hopper then stated that Douglas forbade him from requesting the lesser included instruction.  Hopper had no documentation in his file to reflect his discussions with Douglas even though it was his practice to have it.  Nor was there any correspondence to Douglas memorializing the conversation, again as was Hopper's custom.  Nor was there any indication during trial from Hopper to the court that Douglas was not allowing him to proffer the less included for theft over his advice.

## II.  <u>JUDGE ANDREWS' FINDING OF HOPPER BEING MORE CREDIBLE ON THE ISSUE OF LESSER INCLUDES THAN DOUGLAS WAS CLEARLY ERRONEOUS</u>.

Judge Andrews, in her ruling, found that Hopper was more credible than Douglas. However, Judge Andrews determination is not supported by the record that Hopper was credible.  Hopper was a former State Trooper and then went to law school.  Documenting conversations is deeply ingrained in his nature.

7

First, Hopper did not follow through with _his_ custom as to documenting information regarding the lesser included charges, to document the file and to send letters to the client regarding the issue at hand. (Hopper, pp. 30, 31, 49-50)    His records of voluminous notes did not show any discussions of lesser included charges even though he would write verbatim as to what was said in his conversations. (Hopper, pg. 17)    Nor did Hopper send any letters memorializing any conversations.    It is hard to believe Hopper, given his training and experience, did not send a letter to Douglas concerning such a poor client decision of the alleged "all or nothing" defense and his belief that the jury would not have convict him because he was a "nice guy".    Nor did Hopper advise the court at trial that Douglas did not want lesser included charges. Second, Hopper admitted he was not candid with Douglas and there was a duty of candor to the client.    Hopper even had the gall to let Douglas think he did fine on the stand when it was clear that he did a terrible job and there was a need to minimize the damage done by the deplorable performance of the defendant.    This was the right time and circumstances to ask for the lesser included charge of theft.

Given these violations of his own pattern and practices concerning documentation, Hopper should not have been found to be more credible than Douglas.    The conviction should be set aside so

a trial can be held where fact finder is instructed on the defense theory.

III. **THE PROSECUTION MADE A HIGHLY IMPROPER CLOSING.**

The State of Alaska does not believe the prosecutor asked for the jury to rely on his knowledge on drug transactions as evidence. The prosecution stated that the drug deal did not happen as Douglas related it. That was patently wrong. However, the State of Alaska does seem to concede at one point that the objectionable term "does begin to approach the obvious impropriety of the comments condemned in Patterson". (Appellee's Brief, pg. 27). As noted in the transcript, the <u>prosecutor</u> first asked Cox about "chasing the ghost" and the term "chasing the demon". [Tr. 195-196] This was before Douglas ever took the stand. Thus, it was not an invited response or terms brought up by the defense. The effect of the prosecutor's statements were to make them rely on his experiences as a drug prosecutor.

As noted in the opening brief, the prosecutor improperly did the following things: called Douglas and Cox "crack heads", vouched for Ali as "honest", improperly used addiction and poverty as a reason to convict and judge credibility. Also, the prosecutor argued, inferentially that Ali was lucky to be alive because he could have ended up murdered as a way to inflame the jury. Because Hopper did not object, these arguments must be reviewed for plain

error.  The standards for plain error have been previously set forth by both the appellant and the appellee.

A.   The Closing

The prosecutor did his closing.  He stated that the jury either had to believe Douglas that it was a drug deal gone bad or believe Ali that he was robbed.  This was truly the crux of the trial.  The prosecution argued that Ali was more believable and credible.  [Tr. 310, 315]   He also refers to Ali as "perfectly innocent".  [Tr. 347]  The prosecution stated that parts of Douglas' story did not ring true.  [Tr. 316]  The prosecutor explained that "I know a lot about it, because I used to prosecute drug cases.  So I--you know, terminologies and terms I used."  (emphases added) [Tr. 316-317]  He then stated that you do not get deals like Douglas described, $200.00 worth of drugs for $100.00.  The prosecutor stated that drugs are about money and that was why there was so much violence around it.  The dealers would not give him any kind of charity.  [Tr. 317]  The prosecution then told the jury that they do not have the experiences with drug dealers, and that they do not know for sure whether they would be generous or not. He stated common sense tells you they would not.  [Tr. 318]  The prosecutor improperly made himself a fact witness (impliedly also an expert) for the jury to rely upon in the case as to drug dealing.

10

The prosecution then stated that the jury needed to consider the two people. [Tr. 321] He noted Douglas was a cocaine addict and he tried to negotiate four dollars off the cab ride. There was no objection to the addict remark or clarification that it was Cox that sought the cab fare reduction, not Douglas. The prosecution then stated that Douglas had been convicted of five dishonest crimes and was on a bender, lost his job and lost his children. [Tr. 322]

The prosecution compared Ali by noted the following: trying to support his family, in the Army Reserve, vulnerable job where cab drivers have been killed and that he is going to school. The prosecution asked the jury if Ali "[i]s in the U.S. Army Reserves...going to tolerate him...smoking up crack cocaine?" [Tr. 322] The prosecution asked the jury to consider the back ground of Ali [Tr. 322]. This background should have included his admissions that he understated his taxes and improperly declared a child as a deduction under the penalty of perjury. It is not unreasonable for a jury to have questions about Ali's veracity about a hand in the pocket when the witness admits to perjurious filings about his tax situation.

The prosecution then turned to Douglas again. He stated that Douglas had every reason to lie. "He was up to his neck". The prosecutor then stated that Ali came in and told the truth, you have no reason to disbelieve him and every reason to disbelieve

11

Douglas.   [Tr. 323] At no time did the defense object to the prosecution's closing argument.

On rebuttal, the prosecutor started off on the topic of "motive" and drug addiction as the motive.  First, he calls Cox and Douglas "crack heads".  Second, the prosecution pointed out the lost jobs, the children issue and the continued use of crack cocaine, Douglas' failure to complete treatment and that he has to get crack.  The prosecutor states that $40.00 worth of crack is a pencil eraser (no basis for the testimony) [Tr. 343] Then the prosecution describes the thought processes of Ali.  He tells the jury that Ali's thought processes are: he turns the corner into the dark, "He's read the headlines: Taxicab driver found dead, you know, off in the boonies, off in a dark street".  Again the prosecution improperly attributes the following thought to Ali: "I might not see my wife; I might not see my kid; I'm calling up. Because the one thing I know is, this guy's from 99." [Tr. 345] These statements were not made by Ali.  The prosecution stated that Douglas was desperate for money. [Tr. 345]  However, the testimony was that Douglas had money, but could not get a response from his dealer.

The prosecution turns to the closing of Hopper. He stated that it was the defense to take someone "who's perfectly <u>innocent</u>, has reported this crime as the victim" and pick him apart. (emphasis added) [Tr. 347]  Then the prosecution pointed out that

12

Hopper did not show Ali the transcript and testimony from the grand jury. The jury had to remember that Ali never agreed with what Hopper stated. [Tr. 348] This showed the fatal flaw of the "squirming on the stand" defense to Hopper's incompetence of not playing the tape of the conversation with Ali and not bringing the police officer in on the "miscommunication" issue.

The prosecution stated that Douglas and Cox were so desperate for drugs, they used the baby they lost as an excuse to get a break on the fare. [Tr. 351-52] The prosecution called Douglas' defense as "repulsive". [Tr. 352] Denigrating a defense is not tolerable.

In rebuttal to the defense's closing, the prosecution stated that Ali appeared to be a simple man that drives a cab, in the U.S. Army Reserves, going to college, he came here from Bangladesh, married, has kids, trying to support them, and doing a job that involves dealing with people like Douglas that they get so desperate they are going to rob you or going to get desperate and mad enough that they are going to pull a weapon. [Tr. 353-354]

B.    General Law

Prosecutorial misconduct violates a defendant's due process rights when it "so infected the trial with unfairness as to make the resulting conviction a denial of due process". Darden v. Wainwright, 477 U.S. 168, 181 (1986). United States v. Young, 470 U.S. 1, 14-20, 105 S.Ct. 1038, 1045-49, 84 L.Ed.2d 1 (1985);

Exh. 2
Page 17

Potts v. State, 712 P.2d 385, 390-95 (Alaska App.1985); Patterson v. State, 747 P.2d 535, 539 (Alaska App. 1987)(improper for prosecutor to call the defendant a "crud") Also see A.B.A. Standards for Criminal Justice Sec. 3-5.8 (2d ed. 1982).

Prosecution closings were recently addressed in State of North Carolina v. Jones, __ S.E.2d __ (North Carolina 2002) [Release date, February 1, 2002] In Jones, North Carolina Supreme Court Justice Orr noted it was improper for a prosecutor to inject his personal views and opinions into the argument before the jury. In Jones, the prosecutor called the defendant a loser, quitter and lower than dirt on a snake's belly. The court also found it was improper to invoke the Columbine shootings and the Oklahoma City bombing. The capital sentencing was reversed. In this case, the prosecution had both name calling and interjected the recent cab driver murders.

The Ninth Circuit also recently addressed closing arguments in Blueford v. United States, __ F.3d __ (9th Cir. 2002)[Release date, February 8, 2002] [Amended October 30, 2002 and November 22, 2002]. As noted in Blueford, [a]n attorney for the government is a "representative not of an ordinary party to a controversy, but of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern all; and whose interest, therefore, in a criminal prosecution is not that it shall win a case, but that justice shall be done." As the court

14

further notes, "The prosecutor's job isn't just to win, but to win fairly, staying well within the rules". The prosecution, in this matter, did not "win" within the rules on stay within well established bounds.

C.    <u>Improper Vouching by the Prosecution</u>

The prosecution does not believe there was an error in this regard. (Appellee's Brief, pg. 27) The prosecution asks, "Would the U.S. Reserves keep Ali if he was smoking crack?" Clearly improper as he was implying the government was testing or checking on the complaining witness. There was no evidence of this and it involved materials outside the scope of the trial. He stated that Ali "told the truth" and was "perfectly innocent" and "honest". [Tr. 323, 347] This was improper vouching for the complaining witness and under scores the importance of the civil impeachment materials that Hopper inexplicably failed to find at the Anchorage courthouse.

The prosecution did not violate some recent admonition concerning expressing opinions on credibility of a witness. It is a long standing rule. In <u>Darling v. State</u>, 520 P.2d 793 (Alaska 1974), the reviewing court adopted the rule that it was improper for a prosecuting attorney to express his personal belief as to the reliability of a witness, whether to bolster the State's case or to discredit the credibility or reliability of defense witnesses. Also, see <u>United States v. Hermanek</u>, 289 F.3d 1076 (9th Cir. 2002)

15

(Release date, May 15, 2002); <u>United States v. Edwards</u>, 154 F.3d 915, 921 (9th Cir. 1998). Both these federal cases underscore the dangers of prosecutors vouching for witnesses.   In <u>Hermanek</u>, Circuit Judge Fisher noted that improper vouching typically occurs in two situations: (1) the prosecutor places the prestige of the government behind a witness by expressing his or her personal belief in the veracity of the witness, or (2) the prosecutor indicates that information not presented to the jury supports the witness' testimony.  <u>Id</u>. at 1098.  In <u>Myers v. State of Florida</u>, 788 So. 2d 1112 (Flo. App. 2001) the defendant's conviction was reversed because the prosecutor improperly bolstered the witness' credibility by stating the witness was "honest" and other affirmations that the complaining witness was telling the truth. <u>Id</u>. at 114.   The prosecutor's statements vouching for the sole complaining witness was contrary to long standing state and federal case law.

Calling Ali honest and denigrating the defense violated the first tenet expressed in <u>Hermanek</u> against vouching for a witness.  In this instance, where it was Douglas' word that there was no robbery and Ali said there was one, the improper conduct of the prosecutor cannot be held as harmless.  The second tenet of <u>Hermanek</u> was violated when the prosecutor essentially testified that the drug deal that Douglas described does not occur in the matter described based on his prior prosecution of drug cases, also

16

by inferring to the jury (the fact finder in the case) that the United States government was checking on if Ali was a drug user or not.

Interestingly, the prosecution could not have argued that Ali was an "honest man" if he was impeached with his own deposition as to being a tax fraud. There is no doubt that Douglas was prejudiced by the lack of civil materials.

D. Using Poverty, Calling Douglas/Cox 'Crack Heads' and the Defense Strategy 'Repulsive', Arguing Addiction and Relative Financial Positions as Evidence and Argument

The State of Alaska states that the prosecution argued the relative financial positions of Ali and Douglas/Cox as to credibility and motive to commit the crime of robbery was proper. It is improper for the prosecution to argue poverty in criminal cases as a reason to convict. United States v. Mitchell, 172 F.3d 1104, 1108-09 (9ᵗʰ Cir. 1999); United States v. Jackson, 882 F.2d 1444, 1449 (9ᵗʰ Cir. 1989). The reviewing courts have also consistently disapproved of the admission of evidence showing the accused's addiction to drugs as proof of motive. Gould v. State, 579 P.2d 535, 538 (Alaska 1978) and Eubanks v. State, 516 P.2d 726, 729 (Alaska 1973).

Here there was no unexplained wealth as required by Mitchell. Douglas stated that he had been given the money and was supposed to obtain drugs for Ali. This he failed to do. The prosecution should have never used this as an argument. Nor should

17

the prosecutor called the defense "repulsive" and Douglas and Cox "crack-heads".

North Caroline did find that calling a defendant a "crackhead" was not improper in State v. Jarret, 527 S.E. 2d 693, 697 (North Carolina 2000) as it was "not extreme nor of such content as to serve only to prejudice and inflame the jury". Calling Douglas and Cox "crack heads" demeaned them and it was to inflame the jury when coupled with the district attorney's statements concerning the past killing of cab drivers. The statements were to illicit the jury's memories of recent cab driver homicides. This could have been references to the Andrus case (Andrus v. State, 2002 WL 31376725 (Alaska App.)) that occurred a year before this case was charged. It may have also been a reference to the Mikell case (Mikell v. State, 2002 WL 81795 (Alaska App.)) In both cases the cab drivers were robbed and murder by the fares that were picked up. The closing argument violated the dignity and integrity of the judicial system that are hallmarks of the justice system.

E.    Inflammatory Argument

The prosecutor is to avoid inflammatory arguments. In this case, the prosecutor did not as he went into the mind-set of Ali that was not in the argument. He raised the specter of Ali being shot and robbed. [Tr. 322] He brought up the fact that such things had been in the newspaper. He played upon the jury's fears

18

as he stated that Ali was worried about his wife and kids. This was improper and it prejudice Douglas it painted him as a potential murderer.

The question was whether the remarks made by the prosecutor played upon the fears, sympathies, passions, or prejudices of the jury as to amount to plain error. <u>Garroutte v. State</u>, 508 P.2d 1190 (Alaska 1973). Without a doubt the statements of the prosecutor were improper. The arguments were to make the jury believe that but for Ali's quick thinking, they could have been sitting on a homicide trial and that Douglas had murder on his mind that night.

### CONCLUSION

This court should find that trial was truly not adversarial as required by the constitution as the defense counsel did not present substantive evidence in the form of the prior inconsistent statement of the complaining witness. Also, the defense attorney failed to find and present evidence of Ali's civil cases and present it to the jury to undercut his credibility. Douglas' conviction should be vacated and remanded back to the lower court for a new trial.

The conviction by the jury was invalid due to the improper evidence and arguments presented by the prosecution. Douglas' conviction should be set aside for those reason also.

19

DATED this _____ day of November, 2002, at Anchorage, Alaska.

                           KALAMARIDES & LAMBERT
                           Attorneys for Appellant

              By: _____
                           Randall S. Cavanaugh
                           ABA #8812215

20