IN THE SUPREME COURT FOR THE STATE OF ALASKA

| | |
|---|---|
| JERRY DOUGLAS ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | |
| ) | |
| STATE OF ALASKA, ) | |
| ) | Supreme Case No. S-1129 |
| Respondent. ) | Appeal's Ct. No. A-8069 |
| ) | Trial Ct. No. 3AN-S99-4292 CR |

**PETITION FOR HEARING**

---
VRA CERTIFICATION

I certify that this document and its attachments do not contain (1) the name of a victim of a sexual offense listed in AS 12.61.140 or (2) a residence or business address or telephone number of a victim of or witness to any offense unless it is an address used to identify the place of the crime or it is an address or telephone number in a transcript of a court proceeding and disclosure of the information was ordered by the court.

---

COMES NOW the Petitioner, Jerry Douglas, by and through his attorney, Randall S. Cavanaugh of KALAMARIDES AND LAMBERT, and pursuant to Alaska Appellate Rules 301-305, hereby petitions the Alaska Supreme Court to hear this case and to reverse the judgment of the trial court. <u>Memorandum Opinion and Judgment</u>, No. 4717 (Alaska App. June 11, 2003)

**I. STATEMENT OF THE CASE**

Douglas was initially charged with second degree robbery and it was upgraded after several months when Ali, the complaining witness disclosed that Douglas had his hand in his jacket and made a gun-like motion. Ali did not state this fact until the day of the grand jury proceeding.

Exh. 3
Page 1

At trial, Ali testified that he was a cab driver, had one child, a member of the U.S. Army reserves, attended college and that he had never been robbed before. [Tr. 24-28]. As to the robbery, Ali remembered talking to Officer Trull. [Tr. 30-32] Ali reported he called 911 and the officers responded. [Tr. 33]

Ali indicated that there was another call from Douglas, who in time, put his hand underneath his jacket and demanded the money or he would be killed. Ali gave him between $80.00 to $90.00 from his shirt pocket. [Tr. 45] He was scared and called 911 on his cell phone, then he called his dispatcher to report what happened. [Tr. 47] Ali told Officer Trull that he did not see a weapon. There was no mention of a weapon or weapon like action to the 911 dispatcher.

On cross-examination, Ali confirmed that it was a couple of <u>months</u> after the robbery that he mentioned the hand under the sweater. [Tr. 89-90] He was not sure if he spoke to the dispatcher, via cell phone, about the topic of a 'weapon'. [Tr. 91] Ali stated he later met with Officer Trull at Carrs to see the photo lineup. Ali stated that Officer Trull never asked him about this at Carrs. [Tr. 94-96]   On cross-examination, Ali confirmed that his testimony was a combination of memory and listening to the tape. [Tr. 103-105] Hopper never played the

Jerry Douglas v. State of Alaska
Case No. S-
Page 2
F:\douglas.pet-for-hrg-revised.wpd

Exh. 3
Page 2

tapes to refute any problems on behalf of Ali understanding Officer Trull's questions.

On cross-examination of Officer Trull, there were no questions by Hopper whether Ali mentioned a weapon, hand under the jacket/sweater, or any questions about whether Ali understood the questioning process. Hopper never played Ali's original statement. The State of Alaska rested.

Hopper gave his opening statement and admitted to numerous bad acts on behalf of his client and his girlfriend to the jury: drugs, unemployment, car impounded and they were staying at a crack house. They were returning a tv when then the cabbie expressed an interest in obtaining drugs. Ali gave cash, Douglas did not provide the product. Ali called it in to the police as a robbery. [Tr. 174-75] This information about a less than healthy lifestyle was supported by the defense witness, Vicki Cox. Cox was impeached with crimes of dishonesty.

Douglas took the stand on his own behalf. Douglas admitted his child had been taken away by DFYS, being unemployed and using drugs. [Tr. 222-225] Douglas stated he and Cox were getting by on her money and his unemployment. He previously resided at the Teen Challenge center for drug treatment and left due to violations. He was still in denial about drugs and did not complete the program. [Tr. 226-28]

Jerry Douglas v. State of Alaska
Case No. S-
Page 3
F:\douglas.pet-for-hrg-revised.wpd

As to the robbery allegation, Douglas admitted having the television and going to Wal-Mart with Cox to exchange it. Ali was the driver of Yellow Cab. Douglas and Cox had been doing drugs that day. [Tr. 231-32] He confirmed the television was exchanged for $60.00. [Tr. 236] Douglas said he was wearing a vest, not a coat with a hood. [Tr. 237]

Douglas and Ali talked on the way back to the apartment building about smoking crack. [Tr. 239-41] Ali was asking Douglas what kind of connections he had. Douglas thought Ali was going to go in for an "eightball". Douglas stated that he did not routinely do this because he lived "the lie" whereby he did not want people to know that he did the stuff. [Tr. 242-44] Douglas admitted he knew drug dealers and even while high, played off like he was not smoking it. [Tr. 244]

Back at the apartment, Douglas told Ali he might be connecting with him later. Douglas later called to have the same cab driver return to the apartment, but he did not know the driver's name or the cab number. Douglas and Ali discussed they were going to go to his dealer's residence over by the Sullivan Arena area. Douglas showed Ali $40.00 and Ali was going to pool his money with his. Douglas told him that if they had $100.00, they could get $200.00 worth of drugs and Ali agreed to go along with that. Douglas admitted that he had been 'beat' as to drugs;

Jerry Douglas v. State of Alaska
Case No. S-
Page 4
F:\douglas.pet-for-hrg-revised.wpd

Exh. 3
Page 4

he had been sold a dummy-pack or had his money taken off with. [Tr. 250-253]

Douglas advised the jury that the dealer they were going to buy from was one he went through a lot. The dealer would know his phone number when Douglas paged him. [Tr. 254] There was no cautionary instruction or limiting instruction requested by the defense. The two men went to the Sullivan Arena area and did not see the dealer's vehicle; therefore, they did not stop and drove back to the apartment. The sale was never completed and Douglas never was able to get the dope and he kept Ali's money.

Douglas testified that he did not rob Ali and he did not go outside to see Ali. [Tr. 266-267, 269] While in custody from a parole violation from Teen Challenge, Douglas was surprised as to the robbery he was being charged with. Again, no cautionary instruction was requested or given. Douglas, when asked if he gave the money back, replied "It was not my intention to beat him". He denied touching the microphone and threatening to kill Ali. [Tr. 266-68] Douglas talked to the jury about parole and being in CIPT. No cautionary or limiting instructions were given. Douglas stated that he felt bad about taking the money and not delivering the dope. If he had gotten dope, Ali would have gotten some dope. Douglas admitted to having been convicted of more than one crime of dishonesty. [Tr. 271]

Jerry Douglas v. State of Alaska
Case No. S-
Page 5
F:\douglas.pet-for-hrg-revised.wpd

LAW OFFICES OF
Kalamarides & Lambert
711 H STREET, SUITE 450
ANCHORAGE, ALASKA 99501
(907) 276-2135

On cross-examination, Douglas confirmed he had been convicted of five dishonest crimes. He stated he did not agree with all the statements of Ali. [Tr. 272, 274] Douglas confirmed he was in the cab, an exchange of money, he was in the photo lineup [Tr. 274] The Prosecutor had Douglas confirm it was important to hold people responsible to their actions. [Tr. 275] Again, no defense objection. The prosecutor asked Douglas if smoking crack cocaine was illegal; he agreed. [Tr. 275] The Prosecutor asked about drug treatment. Douglas stated it was through DFYS. There was a question about the Teen Challenge violation. [Tr. 276] Again, there was no relevance objection sought by the defense or cautionary instruction. Douglas confessed to using cocaine to a probation officer. Douglas mentioned 'cops showed up on him' and he was violated. [Tr. 277]

The Prosecutor then asked Douglas who his dealer was, but Douglas refused to answer. The Prosecutor mentioned that they may want to talk to him. [Tr. 280] Once again, there was no relevance objection by the defense or cautionary instruction by the court. Douglas stated that if he gave his dealer $100.00, he would get $200.00 worth because he had already spent thousands of dollars with the dealer. The prosecutor asked if Douglas lied about his drug dealings. [Tr. 280-282] Douglas stated that Cox did the dealings because he was on probation. [Tr. 282] Again, no

Jerry Douglas v. State of Alaska
Case No. S-
Page 6
f:\douglas.pet-for-hrg-revised.wpd

objection or limiting or curative instruction was sought by the defense.

There was further questioning by the prosecution and the defense rested. [Tr. 307] The State of Alaska called Officer Trull in rebuttal. He testified that he was dispatched to the scene at 3:22 a.m. [Tr. 308]

The prosecutor did his closing and there was no objection. He stated the jury either had to believe Douglas that it was a drug deal gone bad or believe Ali that he was robbed. The prosecution argued that Ali was more believable and credible. [Tr. 310, 315] The prosecution stated that parts of Douglas' story did not ring true. [Tr. 316] The prosecutor explained that "I know a lot about it, because I used prosecute drug cases. So I---you know, terminologies and terms I used." [Tr. 316-317] He then stated "you don't get deals like Douglas described, $200.00 worth of drugs for $100.00." The prosecutor stated that drugs are about money and that was why there was so much violence around it. The dealers would not give him any kind of charity. [Tr. 317] The prosecution then told the jury the don't have the experiences with drug dealers, and know for sure whether they would be generous or not. He stated common sense tells you they would not. [Tr. 318]

Jerry Douglas v. State of Alaska
Case No. S-
Page 7
F:\douglas.pet-for-hrg-revised.wpd

Exh. 3
Page 7

The prosecution then stated that the jury needed to consider the two people. [Tr. 321] He noted Douglas was a cocaine addict and he tried to negotiate four dollars off the cab ride. There was no objection to the addict remark or clarification that it was Cox that sought the cab fare reduction, not Douglas. The prosecution then stated that Douglas had been convicted of five dishonest crimes and was on a bender, lost his job and lost his children. [Tr. 322]

The prosecution compared Ali. He noted the following about Ali: (1) trying to support his family, in the Army Reserve, vulnerable job where cab drivers have been killed. He's going to school. He ask's "Is the Army Reserves going to tolerate him smoking up crack cocaine?" [Tr. 323] This was subtle argument that the Reserves was monitoring Ali for crack usage.

The prosecution then turned to Douglas again. He stated that Douglas had every reason to lie. "He was up to his neck." The prosecutor then stated that Ali came in and told the truth, you have no reason to disbelieve him and every reasonable to disbelieve Douglas. [Tr. 323] At no time did the defense object to the prosecution's closing argument.

On rebuttal, prosecutor started off on the topic of 'motive' and drug addiction as the motive. First, he calls Cox and Douglas "crack heads". Second, pointed out the lost jobs,

Jerry Douglas v. State of Alaska
Case No. S-
Page 8
F:\douglas.pet-for-hrg-revised.wpd

Exh. 3
Page 8

children and continued use of crack cocaine. Douglas' failure to complete treatment and that he's got to get crack. The prosecutor states that $40.00 worth of crack is a pencil eraser (no basis for the testimony) [Tr. 343] Then the prosecution described the thought processes of Ali. He told the jury that Ali's processes are: 'he turns the corner into the dark, "He's read the headlines: Taxicab driver found dead, you know, off in the boonies, off in a dark street". Again the prosecution attributes the following thought to Ali: "I might not see my wife: I might not see my kid; I am calling up. Because the one thing I know is, this guy's from 99." [Tr. 345] The prosecution stated that Douglas was desperate from money. [Tr. 345] However, the testimony was Douglas had money, but could not get a response from his dealer. The same as Ms. Cox.

The prosecution turned to the closing of Hopper. He stated that it was a repulsive defense to take someone "who's perfectly innocent, has reported this crime as the victim" and pick him apart. [Tr. 347] Then the prosecution pointed out that Hopper did not show Ali the transcript and testimony from the grand jury. The jury had to remember that Ali never agreed with what Hopper stated. [Tr. 348]

The prosecution stated that Douglas and Cox were so desperate for drugs, they used the baby they lost as an excuse to

Jerry Douglas v. State of Alaska
Case No. S-
Page 9
F:\douglas.pet-for-hrg-revised.wpd

Exh. 3
Page 9

get a break on the fare. [Tr. 351-52] The prosecution called Douglas' defense as 'repulsive'. [Tr. 352] There was no defense objection or intervention by the trial court.

The prosecution stated that Ali is what he appeared to be "simple man that drives a cab; in the U.S. Reserves, going to college, from Bangladesh; married, has kids, tries to support them. Doing a job that involves dealing with people like Douglas, they get so desperate that they going to rob you or going to get desperate and made [sic] enough they're going to pull a weapon." [Tr. 353-354] Douglas was found guilty.

New counsel was appointed and found that there were civil materials that would have impeached the prosecution presented persona of Ali: he under-declared his income under oath; improperly declared a child as a dependant; he was a landlord who had handled his own court proceedings and been both a plaintiff and defendant in civil personal injury suits. Hooper, the trial counsel, never found the materials during his tenure as Douglas' trial attorney.

John Murtagh, a criminal defense expert, stated that Hopper's actions provided constitutionally ineffective assistance of counseling for failing to find the civil materials and failing to properly impeach Ali with the prior testimony. The prosecutor, in his words, 'savaged Hopper' with the failure to impeach Ali

Jerry Douglas v. State of Alaska
Case No. S-
Page 10
F:\douglas.pet-for-hrg-revised.wpd

with his prior inconsistent statements. The trial court found against Douglas in his motion for a new trial. The Court of Appeals did not address the testimony of Mr. Murtagh or his report. Murtagh stated that Hopper was ineffective.

### A. BASIS FOR THE PETITION FOR HEARING.

#### 1. Improper Vouching by the Prosecution.

The prosecution asked the jury in closing, "Would the U.S. Reserves keep Ali if he was smoking crack?" Clearly improper as he was implying the government was testing or checking on the complaining witness. There was no evidence of this and it involved materials outside the scope of the trial. He stated that Ali "told the truth" and was "perfectly innocent" [Tr. 323, 347] This was improper vouching for the complaining witness and under scores the importance of the civil impeachment materials that Hopper failed to find.

In Darling v. State, 520 P.2d 793 (Alaska 1974), this court adopted the rule that it was improper for a prosecuting attorney to express his personal belief as to the reliability of a witness, whether to bolster the State's case or to discredit the credibility or reliability of defense witnesses. United States v. Edwards, 154 F.3d 915 (9th Cir. 1998)(A prosecutor may not impart to the jury his belief that a government witness is credible). The Court of Appeal's decision not to over turn the

Jerry Douglas v. State of Alaska
Case No. S-
Page 11
F:\douglas.pet-for-hrg-revised.wpd

Exh. 3
Page 11

conviction is clearly contrary to standing state and federal law. The mere recitation of a jury instruction that closing argument is not evidence did not cure the errors committed by the prosecution.

   2. **Using Poverty, Calling Douglas/Cox 'Crack-heads' and the Defense Strategy 'Repulsive', Arguing Addiction and Relative Financial Positions as Evidence and Argument**.

The prosecution improperly argued the relative financial position of Ali and Douglas/Cox as to credibility and motive to commit the crime of robbery. It is improper for the prosecution to argue poverty in criminal cases as a reason to convict. United States v. Mitchell, 172 F.3d 1104 (9th Cir. 1999). This is especially true when the complaining witness is a self-professed tax cheat. The reviewing courts have also consistently disapproved of the admission of evidence showing the accused's addiction to drugs as proof of motive. Gould v. State, 579 P.2d 535 (Alaska 1978) and Eubanks v. State, 516 P.2d 726 (Alaska 1973). The Court of Appeals clearly erred on this point.

   3. **Improper Inflammatory Argument**

The prosecutor is to avoid inflammatory arguments. In this case, he did not as he went into the mind-set of Ali that was not in the argument. He raised the specter of Ali being shot and robbed.[Tr. 322] He brought up the fact that such things had been in the newspaper. He played upon the jury's fears as he

Jerry Douglas v. State of Alaska
Case No. S-
Page 12
F:\douglas.pet-for-hrg-revised.wpd

stated that Ali was worried about his wife and kid. This was improper and it prejudiced Douglas as it painted him as a potential murderer. The Court of Appeals conceded that this was not supported by the evidence but failed to overturn the conviction.

The question was whether the remarks made by the prosecutor played upon the fears, sympathies, passions, or prejudices of the jury as to amount to plain error. Garroutte v. State, 508 P.2d 1190 (Alaska 1973). Without a doubt the statements of the prosecutor were improper. Prosecutorial misconduct violates a defendant's due process rights when it "so infected the trial with unfairness as to make the resulting conviction a denial of due process". Darden v. Wainwright, 477 U.S. 168 (1986); Potts v. State, 712 P.2d 385 (Alaska App.1985); Patterson v. State, 747 P.2d 535 (Alaska App. 1987)(improper to call the defendant a crud)  Also see A.B.A. Standards for Criminal Justice Sec. 3-5.8 (2d ed. 1982).

In this matter, it was a credibility question: Did Ali want drugs from Douglas and his connection? Then when he did not receive them he then used the police to obtain his money back and obtain revenge?  It was a credibility case and the prosecution used unfair means (coupled with Hopper's failure to obtain

Jerry Douglas v. State of Alaska
Case No. S-
Page 13
F:\douglas.pet-for-hrg-revised.wpd

records and properly impeach the witness) to tip the scales against Douglas.

4. **The trial court erred in finding Hopper more credible than Douglas on the lesser included offense issue**.

Hopper was discharged prior to sentencing and was deposed. The deposition was filed with the court as Hopper did not respond to a request for an affidavit. [Exc. 114-44] All references to "H" denote the transcript of the deposition. [Exc. 124-154]

Hopper is a criminal defense attorney who had completed criminal trials and asked for lesser included charges. Hopper had been a state trooper. Hopper had asked for lesser included charges in other cases. Hopper knew how to impeach a witness with an inconsistent statement because he had done this previously. (H. At 6-7) Hopper knew that Ali had made inconsistent statements concerning the level of the robbery; specifically, statements that upgraded the robbery in the first degree to robbery in the second degree. (H. at 8)

Hopper knew that Douglas believed the robbery was in fact not a robbery, but a theft which was told him on two separate occasions. (H. at 18,19, 20) The defense theory was that Douglas received the money from Ali for a drugs, but Ali did not receive the drugs or the money back. (H. at 32) It was not

Jerry Douglas v. State of Alaska
Case No. S-
Page 14
F:\douglas.pet-for-hrg-revised.wpd

Douglas' intent to keep the money, but it worked out that way. (H. at 34) Eventually, the dope did arrive and Douglas ended up smoking it. (H. at 34) It was Douglas' thought that if the jury thought he was a 'nice guy', the jury would not convict him. The defense theory was that Douglas received the money from Ali for a drugs, but Ali did not receive the drugs or the money back. (H. at 32, 55, 60) Essentially, it was an "all or nothing defense" according to Hopper. (H. at 55)

Hopper acknowledges that theft can be a lesser for robbery. (H. at 13) Hopper admitted that the lesser included for theft was not asked for. Hopper stated that he didn't think the lesser included applied and that Douglas would not permit it. (H. at 29, 42) Hopper had no recollection of advising the court that Douglas did not want a lesser included charge. It was Hopper's <u>policy</u> to document a client's refusal as to lesser included charges in his notes. (H. at 30) Hopper did not send things to Douglas in writing as was his normal practice. (H. at 31, 49-50)

Hopper took notes verbatim of what the defendant would say. (H. at 16-17) Hopper testified that he discussed lesser included charges with Douglas but his notes did not reflect it. He had pulled the law on theft and the transitional statement. (H. at 27-28) Hopper reviewed all his notes and agreed there were <u>no notes</u> about lesser included charges being discussed. Lesser

Jerry Douglas v. State of Alaska
Case No. S-
Page 15
F:\douglas.pet-for-hrg-revised.wpd

Exh. 3
Page 15

included charges could have been discussed on the record. (H. at 43-44)

As Hopper failed to document the matter and write letters to memorialize the matter, which was his own protocol, the finding of credibility should have gone to Douglas. This is especially true when Hopper was admittedly not candid with Douglas as to his testimony on the stand. Hopper did not tell Douglas that his performance was terrible on the stand he should has for a lesser included charge. Douglas probably did ask Hopper how he did, but <u>Hopper was not honest with him about it.</u> (H. at 63-65) As to the lesser included issue, Judge Andrew was troubled and concerned given the highly detailed notes of Hopper and it wasn't in the notes. [Tr. 489, 492] Still, she ruled against Douglas on this point. Judge Andrews should have ruled in Douglas' favor since Hopper failed to follow his own procedures and was admittedly not candid with Douglas during the trial.

5. **<u>Hopper was ineffective for not impeaching Ali with the prior inconsistent statements</u>**.

Murtagh opined that, based on his review of the entire matter, Hopper was ineffective in the area of impeachment. Judge Andrews found it to be clearly tactical and ruled against Douglas. [Tr. 492] After applying the <u>Risher</u> standard, Judge Andrews ruled that the defendant did not meet his burden to show

Jerry Douglas v. State of Alaska
Case No. S-
Page 16
F:\douglas.pet-for-hrg-revised.wpd

Exh. 3
Page 16

by clear and convincing evidence that the trial attorney's activities fell beneath the standard of minimal adequacy and that failure contributed to his conviction. [Tr. 492] However, just stating it was tactical does not immunize it from review.

Tactical decisions of trial counsel only deserve deference when: (1) counsel in fact bases trial conduct on strategic considerations; (2) counsel makes an informed decision based upon investigation; and (3) the decision appears reasonable under the circumstances". Sanders v. Ratelle, 21 F.3d 1446, 1456 (9th Cir. 1994).

Hopper confirmed he **did not show** the transcript to Ali during the trial. [Tr. 430] Hopper chose not to show Ali the statement because he was satisfied with the impression that he was giving to the jury. Ali was squirming. [Tr. 431, 438-40] Hopper stated he had the tape and player for the playing of the 911 tape, but chose not to play it. [Tr. 432, 441-42] However, as noted by Mr. Murtagh, the prosecution argued to the jury that there was no impeachment since the statements were never shown. Judge Andrews was wrong in not finding there was a lack of proper impeachment of Ali (thereby putting forth substantive evidence on the behalf of the defendant). The Court of Appeals should have overruled the decision of Judge Andrew's based on the testimony of Mr. Murtagh, the deposition and the trial record.

Jerry Douglas v. State of Alaska
Case No. S-
Page 17
F:\douglas.pet-for-hrg-revised.wpd

6. **The Court of Appeals erred in finding no area when the prosecutor stated that Douglas' version of how drug deals goes was wrong, based on his experience as a drug prosecutor.**

This statement was mad during closing argument and not objected to. The prosecutor told the jury that Douglas' version of events did not match his experience as a prosecutor. This was injecting the prosecutor's professional experience into the trial as a witness. In essence, the prosecutor was asking the jury to disbelieve Douglas' testimony based on the his experience in prosecuting drug cases. This was making the prosecutor a witness-advocate.

7. **The Court of Appeals wrongly stated that the civil materials would not have been admissible against Ali.**

Douglas disagrees. The civil materials that Hopper failed to locate would have been admissible as relevant evidence to destroy the persona created by the prosecutor under Evidence Rule 401. The prosecution put his honesty into question. Hopper would have crossed Ali with the information that he was more than a simple cabbie. Further, that his oath was not taken seriously since he lied on his tax information. This would have shown the jury that Ali was not as trustworthy and "honest" as presented by the prosecution.

Jerry Douglas v. State of Alaska
Case No. S-
Page 18
F:\douglas.pet-for-hrg-revised.wpd

Exh. 3
Page 18

B.  **THE COURT OF APPEALS FAILED TO ADDRESS SEVERAL ISSUES**

1. <u>Prosecution Calling the complaining witness an "honest man" in closing argument</u>.

The Court of Appeals did not address this point at all. The prosecution is not to vouch for a witness. The prosecution called Ali an honest man in a case based purely on his word and the lack of investigation. Ali was not honest, he lied on his taxes. See point 1.

The prosecution actions were in direct contradiction of federal case law. In <u>United States v. Hermanek</u>, 289 F.3d 1076, 1098 (9th Cir. 2002) noted that improper vouching typically occurs in two situations: (1) the prosecutor places the prestige of the government behind a witness by expressing his or her personal belief in the veracity of the witness, or (2) the prosecutor indicates that information not presented to the jury supports the witness' testimony. In this matter, the prosecutor both vouched for Ali and argued facts not in evidence: Ali's thought processes and the fact that Douglas' version of events does not occur in the drug-trade.

2. <u>Denigrating the defense in the case in its closing argument</u>.

It is also black-letter state and federal law that the prosecution is not allowed to denigrate the defense. The prosecution called the Douglas' defense of "picking at Ali"

Jerry Douglas v. State of Alaska
Case No. S-
Page 19
F:\douglas.pet-for-hrg-revised.wpd

LAW OFFICES OF
Kalamarides & Lambert
711 H STREET, SUITE 450
ANCHORAGE, ALASKA 99501
(907) 276-2135

"repulsive" in front of the jury. This was patently improper and contrary to state and federal law. See section 2. The Court of Appeals did not address this point at all. This misconduct clearly was in contradiction to the Douglas' state and federal due process rights and cumulatively added to the misconduct committed by the prosecution: vouching for Ali as an 'honest man' and implying the Reserves was watching over him, arguing facts not in evidence as to Ali's thoughts that there was a specter of a possible cab-driver murder, arguing-based on <u>his</u> professional experience-the Douglas' version of the events does not happen.

### CONCLUSION

Douglas' conviction's should have been reversed by the Court of Appeals due to the ineffective assistance of counsel by Hopper and the prosecutorial misconduct committed on behalf of the State of Alaska. The petitioner's petition for review should be should be granted.

DATED this \_\_10\_\_ day of July, 2003, at Anchorage, Alaska.

KALAMARIDES & LAMBERT
Attorneys for Petitioner

By: _____
Randall S. Cavanaugh
ABA #8812215

Jerry Douglas v. State of Alaska
Case No. S-
Page 20
F:\Cases\Douglas-Jerry\Supreme\pet-for-hrg-revised.wpd