Mary C. Geddes
Assistant Federal Defender
FEDERAL PUBLIC DEFENDER
FOR THE DISTRICT OF ALASKA
601 West Fifth Avenue, Suite 800
Anchorage, Alaska  99501
(907) 646-3400

Attorney for Petitioner

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| JERRY LEE DOUGLAS,<br><br>                    Petitioner,<br><br>vs.<br><br>SUPERINTENDENT ZEE HYDEN,<br><br>                    Respondent. | Case No. 3:03-cv-0221-JWS<br><br>**REPLY TO RESPONSE TO OPENING BRIEF IN SUPPORT OF PETITION FOR WRIT OF HABEAS CORPUS** |

Jerry Douglas continues to rely upon the facts and authorities cited in his opening brief.  He does submit additional argument, as follows.

I.  Ineffective Assistance of Counsel Issues

    A.  The failure to conduct an adequate pretrial investigation of complaining witness's credibility

Mr. Douglas moved for a new trial because his trial attorney had failed to adequately investigate the credibility of the complaining witness, Muhammed Ali.  He specifically complained that Mr. Hopper had failed to locate, within the very courthouse where his trial took place, existing public court records which bore upon the credibility of the only eyewitness, the alleged victim.

The state court denied Mr. Douglas's motion, despite having first heard from another defense attorney that he had easily found the records through the courthouse index. The court found that Mr. Hopper's two inexplicably unsuccessful attempts to locate the records was a "good faith" effort. Despite evidence to the contrary, the court further opined that the effort was more than usually made by the "average competent attorney." (Tr. 484) The court of appeals affirmed that determination. It also agreed with the trial court that, as the records themselves were irrelevant and inadmissible, Hopper's failure to locate the records themselves could be of no consequence (prejudice) to the outcome of the case.

The unreasonable application prong of the habeas statute allows for a writ to issue if the state court correctly identifies the governing legal principle for Supreme Court case law (*Strickland*), but unreasonably applies that principle to the facts of the petitioner's case.

As already stated in his opening brief, Mr. Douglas relies upon the principles stated by the Supreme Court in *Wiggins v. Smith*, 539 U.S. 510, 123 S. Ct. 2527, 156 L. Ed. 2d 471 (2003); *Williams v. Taylor*, 529 U.S. 362, 413, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000); and *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). He argues that the state court erred in its specific application of the *Strickland* standard of reasonable competence of defense counsel, as required by the Sixth Amendment of the United States Constitution. Mr. Douglas also asserts that the court failed to apply Supreme Court principles in determining the prejudice arising from the defense attorney's failure to investigate.

First, Mr. Douglas contends that the state court's determination that Mr. Hopper's "good faith" efforts were enough constituted a unreasonable determination of what obligation is owed by a reasonably competent attorney in his investigation.

Second, Mr. Douglas contends that the prejudice arising from the attorney's failure to investigate was erroneously limited. The state court courts considered only the direct admissibility of the documents located in the state courthouse file, and not their derivative value. For example, there was no consideration whatsoever given to the character evidence that a defense attorney would expect to develop through these records, *see* Alaska Rule of Evidence 608(a), or to events in trial which would make such records relevant, e.g., if Mr. Ali said, "I always tell the truth under oath." Under Alaska Rule of Evidence 608(b), the subject matter of the records would be then relevant and admissible.

In this case, Mr. Hopper was informed by his client that there were public court records available at the courthouse which pertained to the veracity of the complaining witness in a civil court case. Mr. Hopper made two tries to locate the records via a courthouse records index system, but he did not locate the records in the index. Mr. Hopper knew of the records' existence, had been informed of their potential materiality, but he did not know how to locate them. Beyond his two tries at the index, he made no other effort to retrieve them. For example, he did not ask Mr. Douglas if he had any more information. He did not ask court personnel for assistance. He did not engage an investigator or ask another person to assist him.

Mr. Hopper had an obligation to look further, since he knew of the records' existence, knew of their potential impeachment value, and he understood the significance of credibility in Douglas's prosecution which rested entirely upon a single witness. *Cf. Williams v. Taylor*, 529 U.S. 362, 396 (2000).

The clearly established precedent of *Strickland*, 466 U.S. 668, 690-91 (1984) (a thorough investigation is virtually unchallengeable), highlights the duty to investigate leads which

promise to develop relevant information. *Strickland* also concerns the objective basis on which the performance of attorney duties should be evaluated.

In *Rompilla v. Beard*, 545 U.S. 374 (2005), the United States Supreme Court recently considered a particular application of *Strickland*. There are differences between the *Rompilla* and *Douglas* cases. *Rompilla* concerned the penalty phase of a capital case, not the adjudication of guilt in a trial. Nevertheless, there are significant parallels for consideration: the lawyers' awareness of the issues to be litigated; the lawyers' awareness of the existence of court records which could bear on the litigation; the relative accessibility of such records; and attorneys' failures to obtain the records.

The defense lawyers in *Rompilla* knew that the government would be seeking to prove up Rompilla's significant history of felony convictions as an aggravator justifying the use of the death penalty. The defense lawyers either did not obtain or did not review the courthouse records for a prior case involving violence. Instead, the defense lawyers relied upon interviews with three mental health experts and the defendant and the defendant's family to develop mitigation evidence, and the Pennsylvania state courts found that the trial counsel had "done enough" to prepare for the penalty trial. While the federal district court was troubled that Rompilla's attorneys had failed to investigate "pretty obvious signs" of other information from which mitigation evidence could be developed, the United States Supreme Court decided it was not necessary to "go there." It approved the issuance of a writ for one "obvious reason."

The Court held that the failure to examine existing, accessible court files fell below the level of reasonable performance. 545 U.S. at 383. One, the defense counsel were aware that a history of convictions for violent crimes would be used by the government to establish an aggravator,

a predicate for the death penalty. Two, the prior conviction file was a public document, "readily available for the asking." 545 U.S. at 383. These two considerations, the Court said, made it "clear and dispositive the lawyers were deficient in failing to examine the court file on Rompilla's prior conviction." *Id.*

It did not matter, the Court said, that the court file on Mr. Rompilla's conviction likely held only negative information: not only should the defense be aware of what the government intended to utilize, but they should determine if there was mitigating information which could be developed from it. The Supreme Court recognized that the duty to investigate "does not force lawyers to scour the globe on the off-chance something will turn up. . . . [R]easonably diligent counsel may draw a line when they have good reason to think further investigation would be a waste." *Id.* (emphasis added).

Certainly, the Supreme Court was not suggesting in *Rompilla* that all that was required for effective assistance was that the defense lawyers merely read a relevant file. The court said that Rompilla's counsel had a duty to make all reasonable efforts to learn what they could. "Reasonable efforts" certainly included obtaining the file and learning the details of the crime, because only then, the Court said, could defense counsel "build its own case in mitigation." 545 U.S. at 386.

This case is one which squarely falls into the *Rompilla* category: where evidence exists for the asking, where it reportedly bears upon the central issue, i.e., the witnesses' credibility, and from which impeaching evidence may be developed.

In Mr. Douglas's case, Mr. Hopper knew that the trial would be the classic "credibility contest," turning wholly on the credibility of the alleged victim. The attorney's duty is

to make all reasonable efforts to learn what one can about the government's case, given what can be anticipated about the case.

This obligation is not just a matter of a good-enough effort. The American Bar Association Standards for Criminal Justice has disseminated "'guides to determining what is reasonable.'" *Wiggins v. Taylor, supra*, at 524, 123 S. Ct. 2527. The analysis involves an objective analysis. 545 U.S. at 375. The defense lawyer is bound to make reasonable efforts to obtain and review all evidence relevant to trial issues. 545 U.S. at 376.

The American Bar Association standards for Criminal Justice describes an attorney's obligation as follows:

> It is the duty of the lawyer to conduct a prompt investigation of the circumstances of the case and to explore all avenues ***leading to facts relevant*** to the merits of the case . . .

1 ABA Standards for Criminal Justice 44.1 (2d ed. 1982 Supp.).

It was unreasonable to determine that Mr. Hopper's investigation was reasonably competent under the circumstances presented here. It was unreasonable to limit consideration of "prejudice" resulting from an incompetent investigation to only the direct evidentiary use of the records concerned.

II. <u>Douglas's Attorney Was Ineffective in Failing to Introduce (Play) Evidence of Ali's Prior Statements for the Purpose of Impeaching His Testimony at Trial</u>

A failure to effectively impeach the complaining witness is a denial of the constitutional right to confrontation. In a first degree (armed) robbery prosecution predicated solely upon the statements of a single complaining witness, the failure on the part of the defense attorney

to move into evidence (play for the jury) the prior inconsistent statements of the witness deprived Mr. Douglas of an effective confrontation of the only evidence against him.

The pertinent legal principle required the ***trial court to determine*** if Mr. Hopper made a reasonable tactical choice, not merely a tactical choice.  Despite language in the court of appeals decision indicating the contrary, the trial court never made that call.  Thus, it failed to apply the correct legal standard under *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984).

What are a witness's prior statement used for in the course of examination?  According to James McComas, in Dynamic Examination of Witnesses (2006), (1) the statements are used to prove the facts either contained in or omitted from the prior statements; (2) to destroy or promote credibility by showing prior inconsistency or consistency; and (3) to gain insight into the motives, bases and interests, and the reliability and the accuracy/inaccuracy of the witness.

Under Alaska law, prior inconsistent statements are admissible as substantive evidence of the truth of the matters they assert or omit.  Alaska R. Evid. 801(d)(1)(A); *Beavers v. State*, 492 P.2d 88, 94 (Alaska 1971); *Natkong v. State*, 925 P.2d 672, 676 n.3 (Alaska App. 1996); *Brandon v. State*, 839 P.2d 400 (Alaska App. 1992); *Van Hatten v. State*, 666 P.2d 1047 (Alaska App. 1983).  Prior inconsistent statements are admissible for the purposes of both substantive evidence (e.g., the event did not occur, the observation was not made), as well as for credibility (i.e., the witness is not believable).

The trial judge can admit extrinsic evidence of prior inconsistent statements, such as tapes and transcripts, even if such statements are admitted by the witness.  *Gordon v. United States*,

344 U.S. 414, 420-21 (1953); *Bentley v. State*, 397 P.2d 976, 978 (Alaska 1965); *Nunn v. State*, 845 P.2d 435, 440-41 (Alaska App. 1993); *Clifton v. State*, 758 P.2d 1279, 1282-83 (Alaska App. 1988).

The value of such extrinsic evidence is acknowledged in *Gordon*:

> The elementary wisdom of the fact that the document is a more reliable, complete and accurate source of information as to its contents and meaning than anyone's description and this is no less true as to the extent and circumstances of a contraction.

344 U.S. at 421. The introduction of an extrinsic statement into evidence should be approved "not merely because it will emphasize the contradiction to the jury, but because it will best inform them as to the document's impeaching weight and significance." *Id.* Thus, the defendant is entitled because (1) it emphasized the contradiction, and (2) it has greater weight and significance in context.

In this case, the trial court did ***not*** determine whether the "tactical choice" made by Mr. Hopper was a ***reasonable*** one. At EH Tr. 492, the trial court identified the choice as "purely tactical" and said the question was merely whether he had a tactical reason. "And you know, ***I just don't find any reason to further analyze that.***"

The trial court's "finding," then, was based on an inadequate inquiry. When a strategic decision is entrusted to the attorney, and the evaluation after the fact must always consider the entire context for the decision, the decision made by the attorney must be ***objectively*** sound. *See United States v. Tucker*, 716 F.2d 576, 586 (9th Cir. 1983) (failure to introduce clearly prepared prior statements was reversible error).

As discussed at length in Mr. Douglas's opening brief, Mr. Hopper's explanation was illogical. Hopper said he did not play the statements because Ali was uncomfortable and squirming

on the stand, and because he sounded sincere on the tape(s). Mr. Hopper's choice meant that the jury never heard Mr. Ali's "sincere" answer that the robber had no weapon.

The focus here is, of course, on the state court's analysis. The court's analysis by its own terms went no further than the identification of the choice as a strategical one. The appellate court assumed it had been a reasoned decision, but the transcript reflects the inquiry was begun and ended with the categorization of the lawyer's action as a "tactical choice."

III.   Lesser-Included Offense

In his motion for a new trial, Mr. Douglas relied upon his attorney's failure to ask for a lesser-included offense instruction as an additional basis for finding ineffective assistance of counsel.

The state courts were oblivious to a fundamental error: national professional standards for competence among defense attorneys require the attorney to decide, and not defer to the judgment of his client. In Mr. Douglas's case, the defense attorney conceded that, in his opinion at the time, a lesser-included instruction should have been requested. This record should reflect that Mr. Hopper's decision was predicated on Mr. Douglas's strategic call, not his own. It is, therefore, uncontroverted that Mr. Douglas's attorney ignored his own professional judgment and deferred to that of his client.

It is also undisputed that the state courts did not apply the standards in *Strickland*, nor consider national and state standards specifying the attorney's obligations in this regard. ABA Standards for Criminal Justice 4-1.1 and 4-1.1 commentary (3d ed. 1993); ABA Model Rules of Professional Conduct, Preamble ¶ 14.21 (2003); Alaska Rule of Professional Conduct 1.2(a), as discussed in *Simeon v. State*, 90 P.3d 181, 184 (Alaska App. 2004).

As to whether Mr. Douglas was even entitled to a lesser-included offense instruction, this court need only consider the procedural history of this case. Originally charged with second degree (unarmed) robbery, Mr. Douglas was later charged with first degree (armed) robbery after Muhammed Ali changed his story on the day of grand jury. Much of Mr. Hopper's cross-examination challenged Mr. Ali's belatedly offered observation that Mr. Douglas had gestured as if he had a gun.

In seeking a lesser-included, Mr. Douglas can certainly rely upon evidence addressed by the state, as well as in his own case, and he is not required to specifically argue a justification for a lesser-included offense in his closing to the jury.

IV.  Prosecutorial Misconduct Coupled with Ineffective Assistance of Counsel

Mr. Douglas relies upon his opening brief, with the addition of the following record citations, for his argument on prosecutorial misconduct.

Page 34, line 2:  COA At. Br. at I, 48.

Page 36, line 13:  Tr. 322.

Page 37, line 11:  Tr. 352.

Page 38, line 10:  Tr. 353.

Page 39, line 23:  Tr. 322.

Page 39, line 26:  Tr. 345.

///

///

///

DATED this 7th day of November, 2006.

Respectfully submitted,

FEDERAL PUBLIC DEFENDER
FOR THE DISTRICT OF ALASKA

/s/ Mary C. Geddes
Assistant Federal Defender
Alaska Bar No. 8511157
601 West 5th Avenue, Suite 800
Anchorage, AK  99501
Ph:  (907) 646-3400
Fax:  (907) 646-3480
mary_geddes@fd.org

Certification:

I certify that on November 7, 2006, a copy of the foregoing document, with attachments, was served electronically on:

Blair M. Christensen, Esq.

/s/ Mary C. Geddes