Mary C. Geddes
Assistant Federal Defender
FEDERAL PUBLIC DEFENDER
FOR THE DISTRICT OF ALASKA
601 West Fifth Avenue, Suite 800
Anchorage, Alaska  99501
(907) 646-3400

Attorney for Petitioner

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| JERRY LEE DOUGLAS,<br><br>                    Petitioner,<br><br>vs.<br><br>SUPERINTENDENT ZEE HYDEN,<br><br>                    Respondent. | Case No. 3:03-cv-0221-JWS<br><br>**OBJECTIONS TO<br>REPORT AND RECOMMENDATION THAT<br>PETITION BE DENIED WITHOUT THE<br>REQUESTED<br>DISCRETIONARY EXPANSION<br>OF THE EVIDENTIARY RECORD** |

    The magistrate-judge would deny all arguments made by Jerry Douglas, including his request for an expansion of the evidentiary record.  Because the briefing has been so extensive, and the magistrate-judge has limited any objections to five pages, Mr. Douglas asks the court to allow him to incorporate, into this written objection, the facts and authorities cited in his opening brief, his reply, his motion for an evidentiary hearing and his motion for reconsideration and clarification.[1]

---

[1] Mr. Douglas moved to vacate his state court conviction on the grounds of ineffective assistance of counsel and prosecutorial misconduct.  Although the magistrate-judge previously recommended dismissal for a failure to exhaust, this district court did not dismiss.  At the time Mr. Douglas filed his opening brief, he also moved for an evidentiary hearing.  The motion for an evidentiary hearing was tentatively denied.  Following the completion of merit briefing, the magistrate-judge has now recommended denial of Mr. Douglas' motion, without an evidentiary hearing.

I.  INEFFECTIVE ASSISTANCE OF COUNSEL

**A. The Failure to Discover and Use Certain Evidence (R & R at 7-11)**

1. *The First Prong*

Ineffective assistance under *Strickland v. Washington*, 466 U.S. 668, 685 (1984) is deficient performance by counsel resulting in prejudice, 466 U.S. at 687, with performance being measured against an "objective standard of reasonableness," *id.*, at 688.

The first objection to the Report and Recommendation, then, is to the magistrate-judge's failure to consider, under the first *Strickland* prong, the matter of the attorney's deficient performance[2] and the constitutionally-flawed evaluation by the state court.[3]

2. *The Second Prong*

As already noted, the magistrate judge considered only whether the state court was correct in ruling that the records themselves – had they been located prior to trial by a competent investigator – would have been admissible and relevant. While skipping the first prong may be appropriate in some IAC cases, *see, e.g., Hill v. Lockhart*, 474 U.S. 52, 106 S.Ct. 366 (1985), it is not appropriate here, in this case.

---

[2] First, his attorney failed to conduct an adequate investigation into the credibility of the complaining witness, Muhammed Ali. This was a critical omission because Mr. Ali was the only witness, and the defendant had made no admissions. Mr. Douglas specifically pointed to the failure of his attorney to locate records concerning the witness in the very same court house where he was tried. It was undisputed that the attorney was told that there were such records in existence. The attorney claimed that he had looked in case file indices but, inexplicably, had failed to find them. Finally, Mr. Douglas established, through an expert witness, John Murtagh, that the records existed and could be found through a public index system, and that the information in those Anchorage court house records should have been used for impeachment purposes.

[3] In rejecting Douglas' claim that Mr. Hopper 's investigation was deficient, the state court expressly relied upon the attorney's "good-faith" efforts, and said they were reasonable. Under the circumstances of this case, i.e. where the attorney had been advised of the records' existence, where they were easily located and obtained, where the information had the potential for impeachment of the only witness, and where the defense was limited to attacking the credibility of the only witness, the attorney's decision to end the search for existing court house records was not reasonable. See *Wiggins v. Smith*, 539 U.S. 510, 522, 123 S.Ct. 2527 (2003) (failure to adequately investigate mitigating sentencing evidence a violation of *Strickland*'s performance prong); *see also Strickland v. Washington*, 466 U.S. 668, 685 t 688-689, 104 S.Ct. 20 (1984) ("counsel has a duty to make reasonable investigations"). Also, the state court erred in its determination of what constituted a reasonably competent performance, without reference to professional standards or to the record of testimony by an expert in criminal defense. Compare *Strickland*, 466 U.S., ibid, at 690-691.

A court house record search is not the be-all and end-all of an investigation, but it is often a mother lode of information useful for impeaching a government witness. That was also true here, with respect to Mr. Ali, as John Murtagh's testimony and Mr. Douglas' briefings make clear

Here, the only defense was that Ali, the complaining witness, was not truthful, and his testimony was not to be trusted. Mr. Douglas' conviction would have to rest entirely upon Mr. Ali's credibility since he was the only witness to the alleged crime. Whether the records themselves were *per se* admissible, it was patently obvious that information derived from the records had evidentiary value that would directly undermine both the testimony given by Mr. Ali, and the arguments made by the prosecution.[4]

**B.      The Failure to Introduce and Play The Tapes of Ali's Prior Statements As Impeachment Evidence.[5]**

The magistrate-judge accepts, as a premise, that prior statements made by the complaining witness to the police were inconsistent with his trial testimony. However, he concludes – as did the state courts – that Douglas' attorney's decision not to play the tapes of Ali's prior statements to the 911 dispatcher and the responding officer was a reasonable tactical decision. This deference accorded to the former attorney's strategic choice – that he did not need to offer the statements as substantive evidence – is unwarranted.

---

[4]  Along with his opening brief, Mr. Douglas submitted affidavits which are appropriate for the discretionary expansion of the evidentiary record in this case. The several affidavits include those pertaining to the organization of and public access to state court house records, and the use of those records by a defense investigator to identify and ultimately locate witnesses as to Mr. Ali's character for credibility.

[5]  On May 13, 1999, Ali, an Anchorage cab driver, reported he had been robbed of $80-$85 by a man he had seen twice that night. Prior to the grand jury proceeding, Ali had twice recounted his version of the night's events and answered questions from police. No weapons or threat of weapon use was ever alleged by Ali. Ali spoke first to the dispatcher who responded to his 911 call (tape of this conversation has been submitted with this brief in support of his motion for expansion of the evidentiary hearing); and second, when interviewed, to APD Officer Trull, who responded to Ali's report of the alleged robbery. Ali spoke with Trull on another occasion when he was asked to review a photo lineup. Because of the content of his reports, Douglas was charged by complaint with second-degree (unarmed) robbery.

However, three months later, on August 3, 1999, on the day of the grand jury proceeding, Ali offered a far more draconian version of the events, alleging for the very first time that Douglas had gestured in a manner indicating that he had a gun. Douglas was consequently indicted for first-degree robbery.

In a nutshell, the inconsistencies between the earlier statements with Ali's testimonies were significant because: the only defense was that Ali was not credible, there was no impeachment evidence independent of Douglas' own self-serving testimony, and the prior statements qualified as substantive evidence. There was <u>no</u> evidence of any strategic gain or advantage to be obtained from failing to introduce the evidence. The lawyer's assessment – that concessions elicited from Mr. Ali through cross-examination – had the same weight as Mr. Ali's own taped words and unruffled expression – was contrary to reason and to law mandating the jury's consideration of substantive evidence and disregard of a lawyer's questions. Strategic choices are worthy of judicial deference only to the extent that they reflect a "reasonable professional judgment." *Wiggins v. Smith*, 539 U.S. 510, 534, 123 S.Ct. 2527, 156 L.Ed.2d 471 (2003) (quoting *Strickland*, 466 U.S. at 690-691, 104 S.Ct. 2052)).

**C.    The Decision Not To Include The Lesser Included Offense Instruction**

Douglas was entitled to a lesser-included offense instruction on the offense of theft. It is uncontroverted that Douglas' trial attorney believed that a lesser-included offense instruction should be requested, but did not request it, even though professional standards reflect that it was his professional duty to make such a request.

The attorney, James Hopper, testified that he did discuss the matter with Mr. Douglas, but that Mr. Douglas insisted that no lesser-offense instruction be proposed. Mr. Douglas has shown that the state court's decision to accept Mr. Hopper's testimony in this regard was unreasonable, given that Mr. Hopper had also testified that he always documented such a discussion, there was no such documentation, and Mr. Douglas adamantly disputed that such a discussion had ever occurred. The magistrate judge first rejects Douglas' argument that the trial court's credibility determination was erroneous. The magistrate attacks this argument because it "has no basis in law." Mr. Douglas disputes that conclusion and directs the magistrate-judge to 28 U.S.C. § 2254 (d)(2) (habeas jurisdiction lies when there has been "an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.")

As to any view or perception inferred from Mr. Hopper's testimony that a lesser-included defense would have been "inconsistent" with Douglas' testimony, it is inapposite because he claims that the only reason he didn't request an instruction was because of Mr. Douglas' expressed preference. Moreover, inconsistent defenses are called "alternative theories," and are commonly utilized for an effective defense at trial.

II.     PROSECUTORIAL MISCONDUCT

The magistrate-judge has concluded that it was fair conduct, in closing arguments, for the prosecutor to assert: that taxi drivers – as a class – are "victims" who "tell the truth" in court; that the taxi driver in this case – a Reservist – was obviously not a drug user because the United States Army Reserves would never tolerate drug use; to characterize that defense as "repulsive"; to describe the area to which the defendant directed the taxi driver as an area where taxi drivers had been killed; and to refer to his own former designation as an experience as a narcotic prosecutor in his evaluation of the trial testimony.

Mr. Douglas objects to the magistrate-judge's determination and relies upon his previous submissions, rather than reiterating them here.

DATED this 20th day of December, 2005.

Respectfully submitted,

FEDERAL PUBLIC DEFENDER FOR ALASKA

/s/ Mary C. Geddes
Assistant Federal Defender
Alaska Bar No. 8511157
601 West 5th Avenue, Suite 800
Anchorage, AK  99501
Ph: (907) 646-3400, Fax: (907) 646-3480
mary_geddes@fd.org

Certification:
I certify that on December 20, 2006, a copy
of the foregoing document, with attachments,
was served electronically on:

Blair M. Christensen, Esq.
Office of Special Prosecutions and Appeals
310 K Street, Suite 308
Anchorage, AK 99501

/s/ Mary C. Geddes